IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETOPIA EVANS, *et al.*, | No. C 16-01030 WHA |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| ARIZONA CARDINALS FOOTBALL CLUB LLC, *et al.*, | |
| Defendants. | |

## INTRODUCTION

This putative class action against thirty-two member clubs of the National Football League follows an earlier lawsuit against the NFL also challenging administration of painkiller drugs. The defendant clubs now move to dismiss, arguing the claims against them are preempted by Section 301 of the Labor Management Relations Act and barred by the statute of limitations. To the extent stated herein, however, the claims against the clubs are *not* preempted under Section 301 and are *not* barred by the statute of limitations. The motion to dismiss is therefore **DENIED**.

## STATEMENT

Plaintiffs include the estate of a former NFL player and twelve retired players. The named plaintiffs, as a group, have played for every club in the NFL from 1964 to 2010. Defendants are the thirty-two member clubs of the NFL (Compl. ¶¶ 1, 8, 14–39).

The following well-pled facts are assumed to be true for purposes of the present motion. Starting in the 1960s, the clubs' doctors and trainers provided players with painkillers, anti-inflammatories, and sleep aids in an effort to quickly return players to the game, rather than allow them to rest and heal properly from serious, football-related injuries. The clubs maintained the "return-to-play" culture by concealing the health risks associated with taking such medications from the players. Club doctors and trainers often failed to disclose adequate or accurate information about side effects or long-term health consequences of the medications. When asked about side effects of medications, club doctors and trainers responded, "none," "don't worry about them," "not much," "they are good for you," or, in the case of injections, "maybe some bruising." These answers misrepresented the actual health dangers posed by these drugs (*id.* at ¶¶ 5–7, 102, 106).

Club doctors and trainers further provided medications without a prescription and without properly documenting administration of the medications. At times, club doctors and trainers provided medications without informing players of the names of the medications (*id.* at 111). Player Jerry Wunsch remembers that on flights home from football games, club trainers would "walk up and down the aisles of the plane, handing out anti-inflammatories and pain killers to anyone who needed them, no questions asked" (*id.* at ¶ 211). Player Steven Lofton remembers that (*id.* at ¶ 217):

> Trainers would simply hand him pills and tell him that he needed to take them. The doctors who injected him never said the name of the drug he was being given. Mr. Lofton does remember that the drugs were being given out like M and M's, the candy. On the plane home from away games, a doctor would walk down the aisle, take pills from zip-lock bags and hand them to the players. Mr. Lofton remembers those flights as being strangely quiet as 53 players were numbed to sleep by the power of the drugs. He was never told by anyone of the side effects of the drugs.

These club distribution practices allegedly violated the Controlled Substances Act and the Food, Drug, and Cosmetic Act (*id.* at ¶¶ 125, 148, 161).

Plaintiffs suffer from internal organ injuries and muscular/skeletal injuries incurred while playing in the NFL and exacerbated by medications the clubs administered to keep

2

players on the field (*id.* at ¶ 13). Some of the plaintiffs suffered latent injuries discovered as recently as 2014 (*id.* at ¶¶ 201, 227).

Plaintiffs filed the instant action against the clubs on May 21, 2015, in the United States District Court of Maryland alleging claims for intentional misrepresentation and "civil conspiracy." The clubs moved to dismiss, arguing the claims are preempted by Section 301 and barred by the statute of limitations. The clubs also moved to transfer the action to the Northern District of California. Judge William Nickerson of the District Court in Maryland granted the transfer. *Evans v. Arizona Cardinals Football Club, LLC*, No. CV WMN-15-1457, 2016 WL 759208, at *4 (D. Md. Feb. 25, 2016). This order follows full briefing, including supplemental briefing, and oral argument.

**ANALYSIS**

**1.   JUDICIAL NOTICE.**

The clubs seek judicial notice of the various collective-bargaining agreements (CBAs) appended as exhibits to their motion to dismiss (Curran Exhs. 1–13). Plaintiffs cite to these CBAs in the complaint (Compl. ¶¶ 73–79) and do not object to judicial notice of them. Accordingly, the clubs' requests for judicial notice of Curran Exhibits 1–13 are **GRANTED**. Because this order need not consider the other materials for which judicial notice is sought, those requests are **DENIED AS MOOT**.

**2.   PREEMPTION AND SECTION 301.**

Unlike ordinary contracts, collective-bargaining agreements enjoy preemptive effect over state common law duties. Section 301 of the Labor Management Relations Act governs "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. 185(a). In enacting Section 301, Congress intended that the rights and duties created through collective bargaining, involving as they do the collective strength of the unionized workers and their employer, should ordinarily trump common law remedies.

In *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456 (1957), the Supreme Court concluded that Congress, through Section 301, had authorized federal courts to create a body of

3

1 federal law for the enforcement of CBAs, "which the courts must fashion from the policy of our
2 national labor laws."

3 In *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962), the Supreme Court concluded
4 that "in enacting Section 301 Congress intended doctrines of federal labor law uniformly to
5 prevail over inconsistent local rules." *Lucas Flour* described the need for preemption:

> The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation.

In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), the Supreme Court examined an employee's state law tort action against his employer for bad faith handling of disability-benefit payments due under a CBA. The employee alleged that his employer and its insurance company breached a state law duty to act in good faith in paying disability benefits. *Allis-Chalmers* held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim, or dismissed as pre-empted by federal labor-contract law." A tort claim "inextricably intertwined with consideration of the terms of the labor contract" must be deemed preempted under Section 301. The Supreme Court found that the claims against the employer and the insurer were thus preempted under Section 301. Significantly, *Allis-Chalmers* went beyond preempting only claims in express conflict with a CBA.

On Section 301 preemption, our court of appeals has summarized the law as follows:

> If the plaintiff's claim cannot be resolved without interpreting the applicable CBA . . . it is preempted. Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA . . . it is not preempted. *The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim . . . .*

4

> A state law claim is not preempted under [Section] 301 *unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.*

*Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689–93 (9th Cir. 2001) (en banc) (emphasis added) (internal citations omitted). "A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility." *Id.* at 691–92.

### A. The *Dent* Action.

In *Dent*, a group of ten retired players, seeking to represent the same purported class as our plaintiffs, sued the NFL. *Dent v. Nat'l Football League*, No. C 14-02324 WHA, 2014 WL 7205048, at *1 (N.D. Cal. Dec. 17, 2014). The *Dent* plaintiffs asserted nine claims, including claims for negligent misrepresentation, negligence *per se,* fraud, and fraudulent concealment in connection with the Controlled Substances Act and the Food, Drug, and Cosmetic Act. The undersigned judge held that resolution of the claims would require interpretation of the CBAs (*id.* at *7):

> In determining the extent to which the NFL was negligent in failing to curb medication abuse by the clubs, it would be essential to take into account the affirmative steps the NFL has taken to protect the health and safety of the players, including the administration of medicine. The NFL addressed the problem of adequate medical care for players in at least one important and effective way, *i.e.*, through a bargaining process that imposed uniform duties on all clubs — without diminution at the whim of individual state tort laws. Therefore, the NFL should at least be given credit, in any negligence equation, for the positive steps it has taken and imposed on the clubs via collective bargaining.

An order in *Dent* (now on appeal) granted dismissal on preemption grounds as to all of plaintiffs' claims against the NFL. The clubs say *Dent* requires the same result here.

### B. The Instant Complaint.

The instant complaint differs in two ways from the complaint in *Dent*. *First*, it is directed at the individual clubs, not the NFL. *Second*, it is directed at *intentional* conduct, not *negligent* conduct. The thrust of the complaint in *Dent* was that the NFL was negligent in failing to police the individual clubs with respect to the indiscriminate use of painkillers and other medications. *Dent* held that evaluating any possible negligence by the NFL would require

taking into account what the NFL had *affirmatively* done via various CBAs to protect the health and safety of the players, not just what it had *not* done. The evaluation of the plaintiff's claims therefore would necessarily require interpretation of the CBAs.

In contrast, the instant complaint is directed at the clubs themselves — what the *clubs* did wrong. Moreover, the claims for relief are grounded in illegal conduct (in violation of statutes) on the part of the clubs. The complaint, therefore, falls under the illegality exception as described in *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d at 695.

In *Cramer*, our court of appeals emphasized that Section 301 does not grant the parties to a CBA the ability to contract for or immunize what is illegal. *Id.* at 695 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985)). There, plaintiffs asserted state-law claims against an employer who had allegedly secretly videotaped employee restrooms through two-way mirrors. The employer argued that the claims were preempted by Section 301 because the claims required interpretation of CBA provisions. Our court of appeals disagreed. "Because a CBA cannot validly sanction illegal action, we hold the terms of the CBA were irrelevant to plaintiffs' claim of privacy violation." *Id.* at 683. *Cramer* concluded that the plaintiffs' state law claims were therefore *not* preempted by Section 301.

So too here. Plaintiffs allege that the clubs made intentional misrepresentations to plaintiffs regarding medications in violation of the Controlled Substances Act and the Food, Drug, and Cosmetic Act. Because the CBAs could not have validly sanctioned the indiscriminate distribution of medications in violation of these statutes, the terms of the CBA need not be construed. The statutory prohibition against such conduct stood independently from any CBA. *Galvez v. Kuhn*, 933 F.2d 773, 777 (9th Cir. 1991). Moreover, Section 301 does not preempt claims to "vindicate nonnegotiable state law rights." *Cramer*, 255 F.3d at 697. Therefore, plaintiffs' claims are *not* preempted under Section 301. The motion to dismiss on the basis of preemption is therefore **DENIED**.

6

The motion to dismiss is not directed squarely at whether there is a private cause of action under the Controlled Substances Act and the Food, Drug, and Cosmetic Act.[1] Rather, the motion to dismiss contends that, whatever the source of the claims, the claims are preempted. This order holds, however, that plaintiffs' claims are *not* categorically preempted. Plaintiffs' claims are anchored in common law but those types of claims can look to statutes to define standards of conduct. In light of *Cramer*, this Court is unwilling to categorically immunize defendant clubs' illegal and indiscriminate distribution of painkillers as alleged in the complaint.

It is true that in *Dent* the district court held that the fraud claims were preempted. Those claims, however, were directed at the NFL. Here, plaintiffs allege intentional misrepresentation on the part of the clubs.

### 3. STATUTE OF LIMITATIONS.

The clubs also move to dismiss on the basis that the claims are barred under the statute of limitations. Of the thirteen named plaintiffs, all are retired.[2] The most recent active employment was in 2010. This raises a statute of limitations problem because all of the alleged wrongful activity necessarily arose before 2010 and plaintiffs filed the lawsuit in 2015.[3] Nevertheless, the nature of at least some of the injuries was latent and slow in developing (*id.* at ¶¶ 201, 227). Therefore, it is not possible to say as a matter of law on this record that the statute of limitations categorically bars plaintiffs' claims. *Harig v. Johns-Manville Products Corp.*, 284 Md. 70, 71 (1978) (holding that a plaintiff's cause of action as to a latent disease accrues when the plaintiff ascertains, or should have ascertained, the nature and cause of the injury). The motion to dismiss on the basis that the claims are barred by the statute of limitations is

---

[1] In support of their preemption argument, the clubs assert that no private right of action exists under the Controlled Substances Act and the Food, Drug, and Cosmetic Act. The clubs raise this argument only in support of their preemption argument. They do not bring a separate attack on the merits of plaintiffs' claims (s*ee* Reply Br. at 3–4).

[2] One plaintiff, Etopia Evans, is the widow of a deceased player. Her husband died after his retirement.

[3] Both parties agree that Maryland's three-year statute of limitations governs plaintiffs' claims (Dkt. Nos. 83 and 84).

7

**DENIED**. The motion is denied, however, without prejudice to later proof that the statute of limitations bars some or all of the claims of individual plaintiffs.

## CONCLUSION

For the reasons stated herein, defendant clubs' motion to dismiss is **DENIED**. A case management order will follow and discovery must begin.

**IT IS SO ORDERED.**

Dated: July 1, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE