Sonya D. Winner (Bar No. 200348)
swinner@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Allen Ruby (Bar No. 47109)
allen.ruby@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4660
Facsimile: (650) 798-6550

Attorneys for Defendants

*Additional counsel listed on signature page*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ETOPIA EVANS, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>ARIZONA CARDINALS FOOTBALL CLUB, LLC, *et al.*,<br><br>        Defendants. | Civil Case No.:3:16-CV-01030-WHA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT AND FOR SUMMARY JUDGMENT ON THE INDIVIDUAL CLAIMS OF CERTAIN PLAINTIFFS**<br><br>Date: April 27, 2017<br>Time: 8:00 a.m.<br>Dept: Courtroom 8<br>Judge: Honorable William Alsup |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.    Plaintiffs Have Failed To State Their Claims with Particularity. ....................................2

    A.    The Court's February 3 Order Established the Standard for Pleading with Particularity in this Case. ..........................................................................2

    B.    The New Allegations of the Second Amended Complaint About Matters Unrelated to the Claims of the Named Plaintiffs Do Not Remedy the Deficiencies Identified by the Court's February 3 Order. ...................................4

    C.    Plaintiffs' New Allegations Fail To State a Claim. ...............................................5

        1.    The Court Should Dismiss with Prejudice Claims As To Which There Has Been No Material Change in the Second Amended Complaint ...........................6

        2.    The Court Should Also Dismiss With Prejudice Claims That Have Been Amended But That Still Fail To Cure the Pleading Inadequacy. ...........................9

    D.    The Court Should Dismiss With Prejudice Each Plaintiff's Claims Against Defendant Clubs As To Which He Makes No Allegations. ...............................14

II.    In Addition, or in the Alternative, the Court Should Grant Summary Judgment on Claims That Are Time-Barred..............................................................................................15

    A.    The Applicable Limitations Period Is Three Years. ...........................................15

    B.    Plaintiffs' Alleged "Discovery" in 2014 of the Theory for Their Claims Is Not Relevant. ...............................................................................................16

    C.    The Undisputed Material Facts Demonstrate That The Vast Majority Of Plaintiffs' Claims Are Time-Barred...............................................................18

        1.    Claims That Survived the Prior Motion To Dismiss ...........................................18

        2.    Plaintiffs Who Have Failed To State a Claim With Particularity.........................22

    D.    Any Claims for Medical Monitoring Are Also Time-Barred. ...........................24

CONCLUSION.......................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

CASES                                                                                               Page(s)

3

*Citibank, N.A. v. K-H Corp.*,
4      968 F.2d 1489 (2d Cir. 1992)........................................................................................8

5   *Doe v. Archdiocese of Wash.*,
   689 A.2d 634 (Md. Ct. Spec. App. 1997) ...............................................................16

6   *Ebeid ex rel. United States v. Lungwitz*,
7      616 F.3d 993 (9th Cir. 2010) .......................................................................................2

8   *Exxon Mobil Corp. v. Albright*,
   71 A.3d 30 (Md. 2013) ..............................................................................................25

9   *Hahn v. Claybrook*,
   100 A. 83 (Md. 1917) .................................................................................................16
10

11   *Hooper v. Lockheed Martin Corp.*,
   688 F.3d 1037 (9th Cir. 2012) ..................................................................................15

12   *Kamath v. Robert Bosch LLC*,
   2014 WL 2916570 (C.D. Cal. June 26, 2014) ...........................................................5
13

14   *Laine v. Wells Fargo Bank, N.A.*,
   2014 WL 793546 (N.D. Cal. Feb. 26, 2014) .............................................................8

15   *Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018, 1022 (9th Cir. 2003) .........................................................................5
16

17   *Miller v. Pac. Shore Funding*,
   224 F. Supp. 2d 977 (D. Md. 2002) .........................................................................16

18   *Moreland v. Aetna U.S. Healthcare, Inc.*,
19      831 A.2d 1091 (Md. Ct. Spec. App. 2003) .........................................................15, 18

20   *Morris v. Minn. Mining & Mfg. Co.*,
   2015 WL 1757465 (D. Md. Apr. 16, 2015) .............................................................21

21   *Outman v. United States*,
   890 F.2d 1050 (9th Cir. 1989) ..................................................................................16
22

23   *Parrish v. Nat'l Football League Players Ass'n*,
   534 F. Supp. 2d 1081 (N.D. Cal. 2007) ..................................................................5, 7

24   *Petrosyan v. AMCO Ins. Co.*,
   2012 WL 12884920 (C.D. Cal. Oct. 9, 2012) ...........................................................8
25

26   *Piselli v. 75th St. Med.*,
   808 A.2d 508 (Md. 2002) ..........................................................................................15

27   *S. Md. Oil Co. v. Texas Co.*,
   203 F. Supp. 449 (D. Md. 1962) ..............................................................................17

28

*Scotten v. First Horizon Home Loan Corp.*,
   2012 WL 3277104 (E.D. Cal. Aug. 9, 2012) ....................................................................8

*State v. Copes*,
   927 A.2d 426 (Md. Ct. Spec. App. 2007) ......................................................................15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ..........................................................................2, 8, 14

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) .......................................................................................15

**STATUTES**

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ........................................................................15

Md. Code Ann., Cts. & Jud. Proc. § 5-109(a) ....................................................................15

**NOTICE OF MOTION AND MOTION TO DISMISS**
**AND FOR SUMMARY JUDGMENT**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 27, 2017, at 8:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable William Alsup, located at 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California 94102, Defendants Arizona Cardinals Football Club, LLC, *et al.*, will and hereby do move for an order dismissing with prejudice the claims of certain plaintiffs asserted in the Second Amended Complaint (Dkt. No. 189) and/or granting defendants summary judgment on certain claims based on the statute of limitations.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Benjamin C. Block and exhibits thereto, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

In its February 3 Order granting in part defendants' motion to dismiss the Amended Complaint (Dkt. No. 168) ("February 3 Order"), this Court gave plaintiffs one final opportunity "to plead their best case" on their misrepresentation and concealment claims. *Id.* at 19. In doing so, this Court provided clear direction on what would be required for that pleading to survive a motion to dismiss – direction that plaintiffs have largely ignored. Rather than pleading specific facts that would support the specific claims of these thirteen plaintiffs, the new allegations in the Second Amended Complaint ("SAC") relate primarily to claims dismissed with prejudice (plaintiffs' RICO and conspiracy claims) or to unasserted claims of retired players who are not plaintiffs in this lawsuit. Indeed, plaintiffs' new allegations seem more focused on garnering publicity than on curing the deficiencies identified by the Court, notwithstanding counsel's assurance at the January 26 hearing that "[w]e can amend this to any degree of particularity you want at this point." Tr. at 40. The few new facts that have been alleged *relating to the plaintiffs* still fall far short of satisfying the pleading standard. As demonstrated in Part I below, plaintiffs' "best case" is far from good enough; those claims should now be dismissed with prejudice.

Independent of the deficiencies in the pleading, the vast majority of plaintiffs' claims are now subject to summary judgment on statute of limitations grounds.  In prior rulings, the Court expressly recognized that plaintiffs' claims might be subject to summary judgment on the basis of the statute of limitations.  *See* Dkt. No. 89 at 7-8; Dkt. No. 168 at 20.  The record is now ripe for such a motion.  As demonstrated in Part II below, it is plain on the undisputed evidentiary record that a large majority of plaintiffs' claims accrued more than three years before this lawsuit was filed and are therefore time-barred.  Indeed, that record discloses that most of these plaintiffs – often represented by the same counsel who represent them here – filed workers' compensation or other claims well before May 2012 seeking to recover for the very same injuries for which they seek recovery here.

## ARGUMENT

### I.      Plaintiffs Have Failed To State Their Claims with Particularity.

The standard for evaluating the SAC under Rule 12 is the standard applied by the Court in its February 3 Order.  Under Rule 9(b), a plaintiff alleging fraud must "state with particularity the circumstances" of the alleged fraudulent conduct.  *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).  Applying this standard, the Court must again consider "whether the amended complaint sufficiently alleges deceit, reliance, and proximate causation."  February 3 Order at 11.  This rule of particularity applies separately with respect to *each plaintiff's* claims against *each defendant* – plaintiffs may not merely "lump multiple defendants together."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  As demonstrated below, the SAC still fails to satisfy these fundamental pleading standards with respect to plaintiffs' previously dismissed claims.  Those claims should now be dismissed with prejudice.

#### A.      The Court's February 3 Order Established the Standard for Pleading with Particularity in this Case.

In its February 3 Order, the Court held that plaintiffs' intentional misrepresentation and concealment claims "must satisfy the heightened pleading requirements of Rule 9(b)" and evaluated "whether the amended complaint sufficiently alleges deceit, reliance, and proximate causation…."  *Id.* at 11.  The Court noted defendants' argument (which plaintiffs had not seriously disputed) that plaintiffs had failed to plead with particularity "how (1) any statements or omissions made by club personnel

about the drugs used were false[,] … (2) [that] any disclosures regarding the risks or side effects of the drugs used would have altered plaintiffs' decision to take such drugs[,] … or (3) [that] any concealed side effects of the drugs used caused plaintiffs' alleged injuries." *Id.* at 11.  The Court identified a "subtler" theory of misrepresentation based on the allegation that defendants had "represented they cared about and prioritized players' health and safety, but in various ways, drove players to return to play at the cost of their health or safety." *Id.* at 12.  Even with respect to that theory, the Court found that most of plaintiffs' allegations failed to satisfy the Rule 9(b) standard.[1]

It was not sufficient, for example, for plaintiff Wunsch merely to allege that an unidentified doctor for an unidentified club at an unidentified time had given his ankle a shot of Hylagan instead of resting him.  *Id.* at 16-17.  Also insufficient was plaintiff King's allegation that he had received "hundreds of pills" to "numb the pain and play," without specifying any particular injuries he sustained as a result of receiving such medications, when this happened, or who was involved.  *Id.* at 17.

The Court identified only eight instances in which it concluded that a plaintiff had pled with particularity specific conduct by a specific defendant that appeared to be "contrary to [the] representations" about the priority of player health and that allegedly injured him.  *Id.* at 14-16.  In each instance, the Court found that the Amended Complaint had asserted *specific facts* alleging: (1) that on a specific occasion, an identified member of a club's staff had acted in a manner contrary to the health of a plaintiff (through specific alleged acts that either misdiagnosed an injury as less serious than it was or that pressured the player to return to play following an injury when doing so was inconsistent with proper medical treatment), and (2) that the player had suffered additional injury as a result of this premature return to play.  The only individual allegation found to pass muster with a different fact

---

[1] The remainder of this Motion assumes, *arguendo*, that this theory is still available to plaintiffs. However, the SAC *omits* the allegations, found at paragraphs 105-108 of the FAC and emphasized in the February 3 Order, that "[t]he Clubs have uniformly represented that they provide players with the best health care available" and that "[t]he clubs also insist that their medical professionals prioritize the players' health."  Also omitted are the allegations – also highlighted in the Court's Order – that when players asked about side effects of medications they were given, they received responses such as "don't worry about them," they are good for you," or "maybe some bruising."  *See* February 3 Order at 2; FAC ¶¶ 105-108.

pattern was plaintiff Carreker's allegation that two clubs had given him such a large quantity of anti-inflammatory drugs that he had built up a resistance to those drugs that, in turn, impeded his ability to use them in treating a heart condition.  Although other plaintiffs alleged that they had been given large quantities of medications, only Carreker alleged *facts* to suggest proximate cause of a specific injury.

The Court emphasized that "a defendant club should only have to defend against claims pled properly against it."  *Id.* at 17.  Accordingly, the Court dismissed all claims other than specific claims against eight defendants that it found to be adequately pled.  *Id.*  Plaintiffs were given leave to amend their misrepresentation and concealment claims one final time "to plead their best case."  *Id.* at 19.

### B.     The New Allegations of the Second Amended Complaint About Matters Unrelated to the Claims of the Named Plaintiffs Do Not Remedy the Deficiencies Identified by the Court's February 3 Order.

The SAC makes no serious effort to meet the Rule 9(b) standard or to add allegations of the type that this Court found necessary.  Instead, the majority of the new allegations address documents and testimony relating, *not* to the treatment of any named plaintiff, but rather to plaintiffs' theory that defendants had violated federal regulatory statutes concerning the handling, transportation, and storage of prescription drugs.  The Court has already dismissed with prejudice the RICO claim that these allegations were previously offered to support.  It also rejected plaintiffs' argument that an intentional misrepresentation or concealment claim could rest on a failure to inform players of such violations, which otherwise were not alleged to have done them any harm.  February 3 Order at 11-12, 17.  As the Court pointed out, it would "strain[] credulity" to suggest that any plaintiff's alleged injuries were proximately caused by a failure to disclose, for example, that provision of a dose of medication by a trainer (rather than directly by a doctor) would violate the Controlled Substances Act – a suggestion that was, in any event, wholly unsupported by the complaint.  *Id.* at 12.  None of the new allegations on such subjects ties to any injury allegedly suffered by any of the plaintiffs in this case.  *See* SAC ¶¶ 2-11, 88-96, 100, 136, 142-45, 184-96, 214-25, 227-28, 235-36, 240, 243-44, & Ex. F.[2]

---

[2] The SAC's four other new exhibits similarly do nothing to cure the pleading deficiencies in plaintiffs' intentional misrepresentation and concealment claims.  Exhibit A is simply a chart identifying the games in which plaintiffs played – and in many instances did not play (as indicated by a "DNP") – during their

(continued…)

Nor is plaintiffs' new pleading bolstered by allegations about experiences of *other* retired NFL players.  Many such allegations are included within the same paragraphs as allegations concerning individual plaintiffs, creating the impression that the *plaintiff*-specific allegations are more extensive than they actually are.  *See, e.g.*, SAC ¶ 250.  But none of these allegations has any connection to the claims of any of the thirteen plaintiffs.  To survive dismissal, plaintiffs must adequately allege their *own* claims; the potential claims of putative class members have no bearing on that question.  *See Kamath v. Robert Bosch LLC*, 2014 WL 2916570, at *5 n.4 (C.D. Cal. June 26, 2014) (court does not consider allegations pertaining to putative class members on motion to dismiss, as named plaintiff must adequately state claim for himself) (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *see also Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1093-94 (N.D. Cal. 2007) (misrepresentation claims not sufficiently pled based on allegations that putative class members relied on representations where plaintiffs did not allege that they themselves saw, heard, and relied on the statements).

### C.    Plaintiffs' New Allegations Fail To State a Claim.

Most of the dismissed allegations of individual plaintiffs against specific clubs are essentially unchanged from plaintiffs' prior pleading; they therefore should be dismissed, now with prejudice, for the same reasons that this Court dismissed those claims in the February 3 Order.  Even where additional facts have been alleged, those allegations are insufficient to rescue those claims in all but one instance.[3]

Exhibit A to this Motion provides a summary table that identifies the clubs against which each plaintiff has offered allegations, with citations to the pertinent paragraphs of the SAC.  Those allegations are discussed further below, beginning with the claims for which the allegations of the SAC are not

---

careers.  Exhibits B, C, and D refer to the number of certain medications allegedly provided by the Colts in 2004, the Jets in 2004-09, and the Steelers in 2013; no plaintiff played on any of those teams in those years.  *See also* FAC ¶¶ 120-23.

[3]  Plaintiff Massey has supplemented his claim against the New Orleans Saints to include allegations concerning an ankle injury that likely satisfy the pleading standard applied by the Court in its February 3 Order.  Defendants accordingly do not seek dismissal of that particular claim, although they do seek summary judgment on that claim on statute of limitations grounds. (*See* pp. 21-22 below.)

materially different from those of the prior complaint and then addressing the claims as to which plaintiffs have made an effort to allege additional facts.[4]

**1.      The Court Should Dismiss with Prejudice Claims As To Which There Has Been No Material Change in the Second Amended Complaint**

For the claims of many of the plaintiffs against various defendants, the SAC presents no material changes to allegations that this Court previously found to be insufficiently pled.

For example, in the prior complaint, plaintiff Sadowski offered the following allegation against the Kansas City Chiefs:

> While playing in the NFL, Troy Sadowski received hundreds of pills from trainers and injections from doctors of Medications. During his time with each of his Clubs, pills were available from trainers and assistant trainers upon request. He was either handed the pills or received them in envelopes. He also received injections of Toradol and Cortisone from Club doctors. The Toradol injections were given prophylactically before every game. … Mr. Sadowski was never told of the side effects of any of these drugs. In fact, he was told by a number of trainers that Toradol was not damaging to his long-term health.  He never used a painkiller, anti-inflammatory or sleep aid before signing his first contract with a Club. Mr. Sadowski's experience with these Medications was substantially similar with each Club for whom he played.

FAC ¶ 229.  Sadowski further alleged that he was provided with Tylenol-Codeine #3 in the visitors' locker room following a game in Tampa Bay.  *Id.* ¶ 303.

This was among the many claims that were dismissed in the February 3 Order.  The allegations of the SAC add no new material allegations, much less particularized allegations of fact.  Sadowski's current allegation against the Chiefs is as follows:

> While playing for the Kansas City Chiefs during the 1991 season, named Plaintiff Troy Sadowski received and consumed enormous quantities of pain-numbing and anti-inflammatory medications at the Chiefs' training

---

[4] This discussion does not separately address clubs for which a plaintiff played but against which he otherwise offers no allegations.  For example, plaintiffs King and Killings played for the Cleveland Browns (SAC ¶¶ 18, 38) but the SAC offers no allegations by either plaintiff of any kind against the Browns.  Paragraph  253, which presents plaintiffs' "best case" substantive allegations against the Browns, offers only allegations relating to plaintiff Harris (who actually played for a *different* defendant, as discussed in note 7 below) and two non-plaintiff putative class members.

facility, home stadium and during away games, all of which he received from Chiefs' team doctors or trainers, including but not limited to trainer David Kendall, who failed to provide a prescription when one was necessary or adequate directions for the medications' use, including adequate warnings of uses that have potentially dangerous health consequences. The medications were provided to him for the sole purpose of enabling him to practice and play through pain. Mr. Sadowski now suffers from the injuries described above, which he directly attributes to the injuries he suffered in the NFL that were masked by the Medications, or the Medications themselves, provided to him by the Clubs for whom he played.

SAC ¶ 261.

Apart from some reorganization and minor rewording, the only difference in Sadowski's claim against the Chiefs (and numerous others like it) consists of the addition of new boilerplate allegations. For example, each plaintiff now asserts that "[t]he medications were provided to him for the sole purpose of enabling him to practice and play through pain." *See, e.g.*, *id*. This allegation simply states the unexceptional proposition that medications were provided to injured players to treat their injuries with the goal of assisting them to return to work. Standing alone, it does not suggest wrongdoing, much less assert a particularized allegation of concealment or intentional misrepresentation.

Similarly unavailing are plaintiffs' new boilerplate allegations that each of them "directly attributes [his current injuries] to the injuries he suffered in the NFL that were masked by the Medications, or the Medications themselves, provided to him by the Clubs for whom he played." *E.g.*, SAC ¶ 261.[5] This conclusory allegation, standing alone (as it generally does), is bereft of specific *facts* tying any particular wrongful conduct of any particular defendant to any particular injury. As an allegation of proximate cause, it is insufficient to satisfy even the standards of Rule 8, much less those of

---

[5] Confusingly, this boilerplate often refers to "foregoing … injuries" or "injuries described above." *See, e.g.*, SAC ¶¶ 246, 250 (Lofton). Yet in many cases, there is no "foregoing" or "above" discussion that offers additional information about injuries of the plaintiff at issue. For example, paragraph 33, referring to plaintiff Lofton, alleges "damage to [unidentified] internal organs and the muscular/skeletal injuries discussed above." No injuries to Lofton are "discussed" anywhere "above" paragraph 33; nor is there discussion, let alone mention, anywhere else in the SAC of "internal organ injuries" allegedly suffered by him. Paragraph 246, which contains the most extensive discussion of Lofton's alleged injuries (and offers the boilerplate language discussed above), alleges only that he suffered muscular/skeletal injuries.

Rule 9(b).  *See Laine v. Wells Fargo Bank, N.A.*, 2014 WL 793546, at *6 (N.D. Cal. Feb. 26, 2014) (rejecting fraud claim where, *inter alia*, plaintiff failed to plead facts establishing that alleged fraud was proximate cause of her alleged damages).[6]  Moreover, because all but one plaintiff asserts allegations against multiple defendants, this boilerplate allegation once again improperly "lump[s] multiple defendants together."  *Swartz*, 476 F.3d at 764-65.

Equally unavailing is the rewording of the allegations of Sadowski and many other plaintiffs to offer a standardized assertion that each plaintiff received "enormous quantities" of medications.  This is a transparent effort to mimic the wording used in the allegations of plaintiff Carreker that the Court previously found sufficient.  *See* February 3 Order at 14-15.  But what allowed Carreker's claim to proceed was not reference to "enormous quantities"; other plaintiffs similarly alleged that they had received medications in large quantities.  *See id.* at 17 (finding insufficient King's allegations that he had received "hundreds of pills").  Rather, Carreker alleged *facts* addressing *proximate causation* of a specific alleged injury.  No other plaintiff has offered similar factual allegations.

Each of the claims listed below follows the same pattern and similarly fails to offer particularized allegations of *fact* beyond those found insufficient as pled in the prior complaint.   For the convenience of the Court, the allegations provided previously and those in the SAC are reproduced side-by-side in Exhibit B to this motion.

**Goode/Indianapolis**.  *Compare* SAC ¶ 259 *with* FAC ¶¶ 114, 231-232, 303.

**Killings/San Francisco.**  *Compare* SAC ¶ 273 *with* FAC ¶¶ 114, 261.

**Lofton/Carolina.**  *Compare* SAC ¶ 250 *with* FAC ¶¶ 114, 250.

---

[6] *See also Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496–97 (2d Cir. 1992) (holding conclusory assertion that "there is a direct causal link between defendants' fraud and [plaintiff's] losses" insufficient to plead proximate cause in fraud claim); *Scotten v. First Horizon Home Loan Corp.*, 2012 WL 3277104, at *6 (E.D. Cal. Aug. 9, 2012) (observing that plaintiffs "include a laundry list of damages … that were allegedly the result of defendants' negligence" but "offer no more than the conclusory allegation … that the alleged negligence was 'a direct and proximate cause' of these damages," holding that such "conclusory allegations and formulaic recitations of elements are insufficient to satisfy federal pleading standards"); *Petrosyan v. AMCO Ins. Co.*, 2012 WL 12884920, at *5 (C.D. Cal. Oct. 9, 2012) (dismissing fraud claim where plaintiff failed to allege facts showing that her damages were proximately caused by reliance on the alleged fraudulent misrepresentations).

**Lofton/New England.**  *Compare* SAC ¶ 265 *with* FAC ¶¶ 114, 250.

**Massey/Arizona.**  *Compare* SAC ¶ 246 *with* FAC ¶¶ 114, 225, 228, 303.

**Massey/Jacksonville.**  *Compare* SAC ¶ 260 *with* FAC ¶¶ 114, 225, 303.

**Massey/New York Giants.**  *Compare* SAC ¶ 267 *with* FAC ¶¶ 114, 225, 303.

**Sadowski/Atlanta.**  *Compare* SAC ¶ 247 *with* FAC ¶ 229-230.

**Sadowski/Kansas City.**  *Compare* SAC ¶ 261 *with* FAC ¶¶ 229, 303.

**Sadowski/New York Jets.**  *Compare* SAC ¶ 268 *with* FAC ¶ 229.

**Sadowski/Pittsburgh.**  *Compare* SAC ¶ 271 *with* FAC ¶ 229.

**Wunsch/Tampa Bay.**  *Compare* SAC ¶ 275 *with* FAC ¶¶ 114, 244, 303.

The absence of any material change to these allegations compels the conclusion that these claims have not been pled with particularity and should now be dismissed with prejudice.

> **2.      The Court Should Also Dismiss With Prejudice Claims That Have Been Amended But That Still Fail To Cure the Pleading Inadequacy.**

The claims of some of the individual plaintiffs against some clubs have been supplemented or amended, but without the addition of facts sufficient to satisfy the pleading standard of Rule 9(b).  None of these plaintiffs offers any new particularized allegations of "deceit, reliance, and proximate causation."  February 3 Order at 11.  Some plaintiffs offer new allegations about injuries they suffered in games for which they received "medications" – but without any allegation that the medical treatment they received caused them injury.  Some now allege that they were "pressured" to play following game injuries but, again, fail to allege that doing so caused them harm.  And some new allegations are simply irrelevant to the claims asserted.

**Evans/Baltimore.**  Evans's allegations against the Ravens, previously found insufficient, have been rephrased to quote the deposition testimony of his widow, but the only new fact alleged is that Evans was given medications by the Ravens' staff *after he retired from football* and while working as a sideline reporter.  *Compare* FAC ¶¶ 114, 223 *with* SAC ¶ 248.  These medications were obviously not provided to enable or pressure Evans to play football and add nothing to any claim of misrepresentation or concealment.

**Evans/Minnesota.**  Evans' allegations against the Vikings, also found insufficient previously, have been rephrased to quote the testimony of Evans' widow, Etopia Evans, but with no change in substance.  *Compare* SAC ¶ 264 *with* FAC ¶¶ 114, 223, 303.  The only new fact alleged is that at some unspecified time *Etopia* Evans was given an antibiotic by a team doctor.  SAC ¶ 264.

**Graham/Pittsburgh.**  Graham has added a new allegation that the first time he received an anti-inflammatory injection, the team doctor did not tell him about "potential side effects."  SAC ¶ 271.  Unique among the plaintiffs, he now alleges that he would have refused the injection had he been told about side effects.  *Id.*  Once again, however, the SAC fails to allege any specific side effects that should have been disclosed to him; nor does Graham assert that he suffered any such side effects.  To the contrary, the only injuries he alleges are muscular/skeletal injuries and "pain" (SAC ¶¶ 37, 271), neither of which is alleged to be a "side effect" of any medication.  No facts are alleged that indicate any causal connection between the particular medications he received and any injury he suffered.  Graham also alleges that he was "pressured" by a coach to play in a playoff game "despite a high ankle sprain that was causing him significant pain and limiting his effectiveness." *Id.* ¶ 271.  However, he does not allege that this caused him any new injury; he does not even allege that he was given medications to enable him to play that day.  Otherwise, his allegations are substantially the same as those that this Court deemed insufficient.  *Compare* SAC ¶ 271 *with* FAC ¶¶ 114, 259, 303.

**Graham/Chicago**.  Graham's allegations against the Bears were previously found insufficient.  The SAC now quotes his deposition testimony that players were generally "pressured to play."  SAC ¶ 251.  It does not, however, identify any occasion when *he* was pressured by the Bears to play notwithstanding an injury that should have kept him off the field, much less any such occasion when he suffered a new or aggravated injury as a result.  Otherwise, his allegations are substantially the same as those that this Court deemed insufficient.  *Compare* SAC ¶ 251 *with* FAC ¶¶ 259, 303.  He still offers no particularized allegations of misrepresentation or concealment that proximately caused him injury.

**Graham/New York Jets**.  Graham's minimal allegations against the Jets (*see* FAC ¶¶ 259, 303) have been supplemented with an allegation that on one unidentified occasion unidentified Jets "trainers and doctors" told him that the Jets did not have enough receivers to play in a game and encouraged him to play.  SAC ¶ 268.  He does not allege that he played in that game or that he suffered injury in doing

so.  He also alleges that the Jets coaches "looked down on [him]" because of a turf toe injury and pressured him to play.  *Id.*  Again, however, he does not allege any occasion when team doctors cleared him to play when they should not have done so; nor does he allege any injury suffered on any such occasion. Nor does he offer any particularized allegations of misrepresentation or concealment that proximately caused him injury.

**Graham/Philadelphia.** The only new allegation that Graham offers against the Eagles is that if he had "a strain or a groin … and I had to get an injection to go through and finish the game or start the game and finish …, I was pressured to do that, just the sense of the pressure because of the situation that was going on."  SAC ¶ 270.  No specific incident of pressure to play or associated receipt of medication is alleged; no persons involved in conveying such "pressure" are identified; nor is there any allegation that such "pressure" caused him injury.  Otherwise, his allegations are substantially the same as those previously found inadequate.  *Compare id. with* FAC ¶ 259.  There are still no particularized allegations of misrepresentation or concealment that was a proximate cause of injury to him.

**Harris/[Baltimore].**  Harris's allegations against the Ravens[7] were also found insufficient previously.  The SAC elaborates on his allegation that he began suffering a rapid heartbeat during his time with this team. *Compare* SAC ¶ 253 *with* FAC ¶¶ 114, 253, 303.  But he does not claim causation, i.e., that medications provided by this defendant caused or aggravated his condition.  And although he alleges that he received medication for the condition and was told that he could continue to practice, he does *not* allege that this was improper medical advice, much less that it caused him any injury.

**Harris/Dallas.**  Although the SAC now describes Harris's treatment by the Cowboys after he hurt his back, *see* SAC ¶ 254; *compare* FAC ¶¶ 114, 253, he does not allege that this treatment caused

---

[7] Although the SAC asserts these allegations against the "Cleveland Browns," the Browns team for which Harris played in 1984 moved to Baltimore in 1996 and is now known as the Baltimore Ravens.  A new expansion team, which assumed the "Browns" name, was then awarded for Cleveland in the 1999 season.  *See* Exhibit 1 to the accompanying Declaration of Benjamin Block [hereinafter "Block Dec."].  Should plaintiffs take the position that Harris's claim is asserted against the (current) Cleveland Browns rather than the Ravens, the Court should enter summary judgment for the Browns on this basis.  No plaintiff asserts any claims against the current Cleveland Browns.  *See* Exhibit A.

him harm.  Nor does he allege that he was pressured to return to play earlier than he should have returned; nor does he identify any injury suffered in any premature return.  He still alleges no particulars of any misrepresentation or concealment that proximately caused him injury.

**King/Buffalo.**  King's allegations against the Bills were also found insufficient.  *See* FAC ¶¶ 114, 248, 303.  In the SAC, King adds a new allegation that at some point in 2006 he injured his back and was given narcotics by "team doctors" and "forced back into the game."  SAC ¶ 249.  He does not identify who "forced" him or how.  Nor does he claim to have suffered any further injury as a result.  Rather, he alleges that he was again injured in the *next* game, but no connection is alleged between the two injuries.  He does not claim that he entered the second game still suffering from the prior injury, that he was given any medications to "mask" pain from the prior injury, or that he was "forced" to play in the second game.  He alleges that he was treated for the second injury but does not allege that the treatment was deficient or that he was pressured to return to play before it healed.  Although the SAC alleges that the Bills' trainer "corroborated" King's account in his deposition, it fills none of these gaps. *See* SAC ¶ 249.  King still offers no particularized allegations of "deceit, reliance, and proximate causation" against this defendant.

**King/Tennessee.**  King's allegations against the Titans were also found insufficient.  *See* FAC ¶¶ 114, 248, 303.  In the SAC, he alleges that he suffered various injuries during the 2007 season and that on each occasion he was given medications and told to get back into the game.  SAC ¶ 276.  He does not, however, allege that any of these injuries was caused or aggravated as a result.  He further alleges that during the 2008 season he hurt his forearm and was given Toradol and pain medications to mask the pain.  *Id.*  Again, however, he does not allege that this led to further injury, and he still offers no particularized allegations of misrepresentation or concealment that proximately caused him injury.

**King/Detroit.**  The SAC supplements King's prior allegations against the Lions (*see* FAC ¶¶ 114, 248, 303) with an allegation that in 2009 King was given painkillers to enable him to play after he separated his shoulder.  SAC ¶ 256.  However, he does not identify any injury suffered as a result. Nor does he otherwise offer any particularized allegations of misrepresentation or concealment that proximately caused him injury.

**Killings/Houston.**  Killings previously made no specific allegations against the Texans.  He attempts to do so in the SAC, but the allegations provided offer nothing beyond the same general conclusory boilerplate that the Court previously rejected as inadequate.  *See* SAC ¶ 258.

**Lofton/Arizona.**  Lofton's allegations against the Cardinals were found insufficient.  The only additional allegation in the SAC is that, in general terms, coaches "would try to encourage you to, you know, tough through it, team needs you, that type of attitude."  SAC ¶ 246.  This does nothing to cure the pleading deficiencies of this claim.  *Compare id. with* FAC ¶¶ 114, 250.

**Sadowski/Cincinnati.**  Sadowski's allegations against the Bengals were found insufficient.  The SAC adds an allegation that Sadowski received Toradol shots before every game but identifies no injury that he is alleged to have suffered as a result.  There is also a new reference to Sadowski's testimony that "trainers will pressure you, get you out of the training room, hey, you been in here too long, get out of here."  SAC ¶ 252.  However, there are still no particularized allegations that Sadowski was himself pressured to play when he should not have done so or that he received substandard treatment for any injury.  *Compare id. with* FAC ¶¶ 114, 229, 303.  Nor are there otherwise particularized allegations of misrepresentation or concealment that proximately caused him injury.

**Ashmore/Los Angeles.**  Ashmore's allegations refer to the same incident from his time with the Rams that was referred to in the prior complaint.  *See* FAC ¶ 239.  His new account of this incident combines in one place allegations that were previously provided in multiple paragraphs but offers no new material allegations of fact.  *Compare* FAC ¶¶ 114, 234-35, 239 *with* SAC ¶ 262.  He still offers no particularized allegations of misrepresentation or concealment that proximately caused him injury.

**Ashmore/Washington.**  Ashmore's allegations against the Redskins also reorganize allegations from the prior complaint, including allegations relating to one incident, but offer no new material facts that would support a misrepresentation or concealment claim.  *Compare* FAC ¶¶ 114, 234-35, 238 *with* SAC ¶ 277.

**Walker/Arizona.**  Walker's allegations against the Cardinals were found insufficient.  The SAC quotes Walker's deposition testimony that statements about not "mak[ing] the team in the training room" and "you're only as good as your last game" were "repeated all the time."  SAC ¶ 246.  However, there are still no particularized allegations that Walker was himself pressured to play when he should not

have done so or that he received substandard treatment for any injury. *Compare id. with* FAC ¶¶ 114, 264. Nor has he otherwise offered particularized allegations of misrepresentation or concealment that proximately caused him injury.

> **D.      The Court Should Dismiss With Prejudice Each Plaintiff's Claims Against Defendant Clubs As To Which He Makes No Allegations.**

As Exhibit A makes clear, no plaintiff even purports to offer allegations against more than a few of the defendants. And as the Court observed in its February 3 Order (at 17), "a defendant club should only have to defend against claims properly pled against it." *See also Swartz*, 476 F.3d at 764-65 (plaintiffs may not merely "lump multiple defendants together" but must "differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud"). Yet both Counts of the SAC are brought on behalf of "All Plaintiffs Against All Defendants." SAC at pp. 114, 119. Regardless of the Court's decision on the specific allegations made by each plaintiff against particular clubs, the Court should at a minimum dismiss each plaintiff's claims against the clubs as to which he makes no such allegations.

Plaintiff Goode, for example, offers allegations only against the Indianapolis Colts. *See* SAC ¶ 259. He does not allege that any other club made a misrepresentation that injured him, concealed information that it was under a duty to disclose to him, or otherwise harmed him. Even if his allegations against the Colts were sufficient to state a claim (and they are not), he has plainly made no effort to state one against any other defendant. Exhibit A to this Motion sets forth a table identifying, for each plaintiff, the defendants against which that plaintiff offers any specific allegations in the SAC. At a minimum, the Court should dismiss with prejudice each plaintiff's claims against all other defendants.

* * * * * * *

Plaintiffs have now had multiple opportunities to amend their pleading, and the Court warned them that the time had come to present their "best case." February 3 Order at 19. Unlike most litigants, plaintiffs have had an opportunity to craft a pleading that reflects, not only their own personal knowledge (which, if they had viable claims, should have been sufficient to address nearly all of the deficiencies), but also information gleaned from extensive discovery. Plaintiffs' inadequately pled claims should now be dismissed with prejudice.

## II.     In Addition, or in the Alternative, the Court Should Grant Summary Judgment on Claims That Are Time-Barred.

In addition, or in the alternative, this Court should grant summary judgment with respect to plaintiffs' time-barred claims.  The applicable statute of limitations is three years.  The playing career of every plaintiff other than Walker ended more than three years before this suit was brought.  Although plaintiffs *allege* that their claims are for "latent" injuries, undisputed *evidence* – in the form of plaintiffs' own deposition testimony, medical records, and workers' compensation and disability filings – demonstrates that the large majority of their claims accrued prior to May 2012 and are therefore time-barred.

### A.     The Applicable Limitations Period Is Three Years.

Plaintiffs assert state-law claims under diversity jurisdiction.  As plaintiffs filed this suit in Maryland, that state's choice-of-law rules apply.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  Under Maryland law, the statute of limitations is procedural; Maryland's limitations period applies regardless of which state's substantive law would apply.  *See, e.g.*, *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1046 (9th Cir. 2012).  That limitations period is three years.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."); *see also Moreland v. Aetna U.S. Healthcare, Inc.*, 831 A.2d 1091, 1095 (Md. Ct. Spec. App. 2003) (intentional misrepresentation claim subject to three-year statute of limitations).[8]

---

[8] Section 5-109(a) of the Maryland Code may provide a more restrictive limitations period:  "An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider … shall be filed within the *earlier* of:  (1) Five years of the time the injury was committed; or (2) Three years of the date the injury was discovered" (emphasis added).  The three-year portion of this provision is materially identical to the three-year period in Section 5-101.  *See State v. Copes*, 927 A.2d 426, 438 (Md. Ct. Spec. App. 2007) (observing that Section 5-109 codifies the discovery rule "judicially engrafted" onto Section 5-101).  As plaintiffs' claims are barred under that three-year rule, this Court need not reach the separate question of whether they also "arise out of" the services provided by team doctors and would therefore be barred by the five-year limitation of Section 5-109(a)(1), which functions essentially as a statute of repose, running from the date the injury occurred without regard to when it was discovered.  *See, e.g.*, *Piselli v. 75th St. Med.*, 808 A.2d 508, 519 (Md. 2002).

A claim accrues for statute of limitations purposes "when the plaintiff knew or, with due diligence, reasonably should have known" of his claim.  *Doe v. Archdiocese of Wash.,* 689 A.2d 634, 638 (Md. Ct. Spec. App. 1997).  Although all of the elements of a claim must be present for a claim to accrue under this standard, even "trivial" damages will suffice to begin the running of the statute of limitations.  *Id.*  There is no exception to the running of the limitations period for plaintiffs who were "aware of the acts but did not appreciate at the time that they were wrong, or did not realize until years later that [they were] harmed."  *Id.* at 641.

Plaintiffs brought this suit in May 2015.  Accordingly, the statute of limitations bars any of their claims that accrued before May 2012.  As this Court recognized in its February 3 Order, plaintiffs' "specific allegations – that the clubs pressured them to play and gave them medications to continue playing, that they thus did not fully heal from injuries … – are all of facts plaintiffs knew or should have known as soon as they occurred."  February 3 Order at 5.  The only remaining question regarding accrual is therefore whether plaintiffs were on notice before May 2012 that they had suffered any injury.

The familiar standard of Rule 56 applies.  When there is "no 'genuine issue' as to the accrual of the statute of limitations … summary judgment is appropriate."  *Outman v. United States*, 890 F.2d 1050, 1053 (9th Cir. 1989); *see also Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985-86 (D. Md. 2002) ("If there is no genuine issue of material fact regarding the accrual of a cause of action, a court may determine the date of accrual as a matter of law.").

## B.   Plaintiffs' Alleged "Discovery" in 2014 of the Theory for Their Claims Is Not Relevant.

This Court previously denied a motion to dismiss plaintiffs' claims as time-barred because the complaint *alleged* that plaintiffs were suffering from "latent" injuries that did not manifest themselves until shortly before plaintiffs filed this lawsuit.  *See* Dkt. No. 89 at 7-8.  But undisputed evidence now proves that prior to May 2012, every plaintiff other than Walker was experiencing ongoing pain in the same body parts about which he now complains.  As explained further below, those undisputed material facts require a conclusion that the statute of limitations accrued years ago at least for all of these plaintiffs' alleged "muscular/skeletal" injuries.  *See, e.g*, *Doe*, 689 A.2d at 639;  *Hahn v. Claybrook*, 100 A. 83, 86 (Md. 1917) (cause of action accrued when plaintiffs' hand began to show discoloration);

*S. Md. Oil Co. v. Texas Co.*, 203 F. Supp. 449, 451-52 (D. Md. 1962) (recognizing that in *Hahn*, the claim accrued in 1908, when the plaintiff first noticed mild discoloration in her hand, not 1913 when that discoloration had "become serious and permanent").[9]

Critically, plaintiffs have now acknowledged that their complaint's repeated, boilerplate averment that no plaintiff "bec[a]me aware that Defendants caused [his] injuries until, at the earliest, March of 2014" (SAC ¶¶ 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39) refers, not to the discovery of any "latent" injury, but rather to the fact that no plaintiff had previously thought of the legal theory of recovery proffered here.  Each of these plaintiffs has responded identically, under oath, to an interrogatory asking for the "facts and circumstances (including the pertinent dates) that first led" him to "become aware that Defendants caused" his injuries:

> In March 2014 [Name] began communicating with Plaintiffs' counsel in connection with this litigation. At that time, [Name] first became aware for the first time that the NFL Member Clubs were engaged in a conspiracy to promote a return to play practice or policy whereby Medications were unlawfully provided to players in an effort to maximize revenue at the expense of players' health and safety.  After being provided with this information, [Name] first understood that the injuries about which he complains were caused by the NFL Member Clubs' conspiracy.

Block Dec. Exs. 2-13 (Pls.' Resps. to Interr. No. 16).  Those responses confirm that these plaintiffs did not lack knowledge of the *facts* underlying their claims before March 2014; rather, it was only then that they first contemplated the conspiracy *theory* advanced unsuccessfully by their counsel in this litigation.

That theory does not affect the running of the statute of limitations.  Just as with their RICO claim, which this Court has already dismissed on statute of limitations grounds, plaintiffs' position "boils down to arguing that the limitations period could not start running until they not only discovered that they had suffered injuries … but also stumbled onto a legal theory fitting those facts."  February 3 Order at 7.  That position is no more tenable under Maryland law than it is under the federal RICO

---

[9] As discussed in more detail below, undisputed evidence also establishes that the majority of plaintiffs' alleged "organ" injuries also accrued prior to May 2012.  However, with the exception of Carreker, the plaintiffs claiming such injuries have not alleged that any of them was proximately caused by any alleged misrepresentation or concealment.  Those claims may accordingly be dismissed without the need to reach the statute of limitations question.

statute.  The statute of limitations accrues when a plaintiff has – or reasonably should have – sufficient "knowledge of facts," not "actual knowledge of their legal significance."  *Moreland*, 831 A.2d at 1096 (emphasis omitted).  Under Maryland law, plaintiffs are "presumed to have had the knowledge of the law that would enable them to determine whether [defendant's actions] had been wrongful."  *Id.* at 1097.

### C.  The Undisputed Material Facts Demonstrate That The Vast Majority Of Plaintiffs' Claims Are Time-Barred.

Undisputed evidence establishes that the vast majority of the claims asserted here accrued before May 2012 and are therefore time-barred.  Indeed, before May 2012 most of these plaintiffs had already filed, *for the very same injuries at issue here*, workers' compensation claims seeking recovery from their employer clubs and/or applications to the NFL's collectively-bargained disability plan.  Many were represented in doing so by plaintiffs' counsel here.  And all have acknowledged in sworn testimony that they experienced prior to May 2012 pain in the same body parts about which they complain here.

For the convenience of the Court, the discussion below divides the plaintiffs into two groups: those whose claims were accepted as sufficiently pled in the February 3 Order (the pleading of which is accordingly not challenged in this Motion) and those that were dismissed previously.  As demonstrated in Part I above, the latter should simply be dismissed again, this time with prejudice.  However, if the Court determines that any of those claims have been sufficiently pled, the second subsection below explains why those claims are barred by the statute of limitations.

### 1.  Claims That Survived The Prior Motion To Dismiss

As in analyzing the pleading deficiencies of the SAC, application of the statute of limitations is properly considered on a plaintiff-by-plaintiff, defendant-by-defendant basis.

**Ashmore** specifically alleged that in 1998, the Raiders pressured him to play despite a wrist injury, that he received medication to enable him to do so, and that his wrist is now permanently damaged.  February 3 Order at 14.  But the SAC concedes that Ashmore had pain in that wrist beginning in 1998 and continuing for the remainder of his career, admitting that the injury was incurred – and that his cause of action accrued – well before May 2012.  (SAC ¶ 269.)  At deposition, he confirmed that his wrist has been damaged, and has caused him pain, ever since his time with the Raiders, which ended in 2001.  (Block Dec. Ex. 14 at 177:19-179:21.)

The SAC also avers that Ashmore "is now in constant pain in his neck, shoulders and knees," (SAC ¶ 262) although it offers no particularized allegations tying those alleged injuries to any wrongful conduct by any defendant.  Even if any claims relating to those injuries had been sufficiently alleged against any defendant, they would still be time-barred.  Ashmore testified that he has experienced pain in his neck, shoulders, and knees ever since retiring from the NFL in 2001.  (Block Dec. Ex. 14 at 177:19-179:21.)  Represented by the same counsel representing him here (Mr. Owens), he filed a workers' compensation claim in 2004 related to his "neck" and another claim in 2008 for "[a]ll body parts," (Block Dec. 15 at 696, 840; Block Dec. 16 at 232) including the same ones he complains about here.  (Block Dec. Ex. 14 at  222:10-228:4, 259:1-260:7.)  A 2010 medical examination in connection with that filing confirmed that he was then experiencing pain with all of these body parts.  (Block Dec. Ex. 16.)  The SAC also alleges that Ashmore's "kidneys may be damaged because a blood test revealed that his kidneys were leaking protein."  (SAC ¶ 262.)  Again, there are no particularized allegations tying that alleged injury to wrongful conduct by any defendant, but if even if there were, that blood test occurred in 2009 as part of a medical examination for a life insurance application.  (Block Dec. Ex. 14 at 180:9-182:22, 258:16-263:1,  Ex. 16 at 233, 248.)  Accordingly, regardless of the adequacy of pleading, any claims relating to these alleged injuries are time-barred.

**Wunsch** has specifically alleged that the Seahawks pressured him to play in a 2003 game despite excruciating pain and that he received medication from the team to do so, resulting in his now suffering from "constant joint and nerve pain."  February 3 Order at 15.  At deposition, Wunsch testified that his "whole body [has been] in pain 24/7" ever since he left the NFL in 2004.  (Block Dec. Ex. 17 at 215:7-11.)  In 2010, Wunsch filed a disability claim with the NFL related to, *inter alia*, forty different conditions including "joint pain" and "numbness in all extremities and shooting pain" (along with pain in his shoulder, elbow, thumb, fingers, ribs, hip, thigh, calf, achilles, ankle, feet, neck, lower back, forearm, center chest, loss of mobility, cyst, disc degeneration, sleep apnea, Crohn's Disease, TMJ, and ringing in his ears).  (Block Dec. Ex. 18 at 201-03.)  That disability claim, in turn, followed a 2009 California workers' compensation claim filed by Wunsch, represented by his counsel here (Mr. Owens), related to his "head, neck, back, spine, shoulders, hips, elbows, hands, wrists, legs, ankles, knees, feet, internal, ENT/TMJ, neuro/psyche, hearing, vision, sleep, [and] chronic pain."  (Block Dec. Ex. 19 at

1942; *see also* Block Dec. Ex. 17 at 210:1-215:17, 223:15-227:3, 230:5-25.)  Based on these undisputed

facts, any such claims in this proceeding are accordingly time-barred.[10]

**Harris** has specifically alleged that he suffered sprained ligaments in his ankle while playing for

the Dolphins, that he received a cortisone injection to play, and that he is now in "constant pain from all

of his joints" including his ankles.  February 3 Order at 15.  At deposition, Harris confirmed that he has

had pain and swelling in his joints for a very long time.  Indeed, in the period before 2012 he had joint

swelling, as well as back pain, knee pain, fatigue, high cholesterol, spondylosis (arthritis of the lower

back), shoulder pain, and obesity.  (Block Dec. Ex. 20 at 209:7-22, 210:21-211:1, 213:2-22, 214:11-18,

216:12-14, 217:6-9, 218:14-18, 219:24-220:4, 268:8-10, 270:21-271:7).  Harris filed workers'

compensation claims related to these orthopedic issues in 1992.  (Block Dec. Ex. 21 at 97-99.)  Based on

these undisputed facts, all claims relating to the muscular/skeletal injuries he alleges in the complaint

("pain from football injuries in his neck, back, hands, shoulders, knees, and ankles" and "arthritis in his

fingers" (SAC ¶ 253)) are time-barred.[11]

**Graham** has specifically alleged that he suffered a broken traverse process in his back while

playing for the Chargers in 2000, that, due to pressure from the team, he continued to play by taking

medications, and that he "now lives in constant pain."  February 3 Order at 15-16.  But in April 2009,

Graham applied for NFL disability benefits related to his lower back and traverse process, which were

"still causing pain and stiffness."  (Block Dec. Ex. 22 at 3566; *see* Block Dec. Ex. 23 at 303:2-305:13,

306:17-307:18).  In that same application, Graham also sought disability benefits related to his neck,

---

[10] The SAC also avers that Wunsch "currently suffers" from "an enlarged liver, a damaged pituitary gland, stomach problems and other endocrine issues."  (SAC ¶ 274.)  But no claim relating to these conditions is pled with particularity.  In any event, Wunsch testified that he has suffered from Crohn's Disease since 2009, and this claim was part of his 2010 workers' compensation filing.  (Block Dec. Ex. 17 at 103:6-104:2; Ex. 18 at 202-03.)

[11] Harris also alleges issues with his heart, but the SAC concedes that they are related to the cardiac issue of which he was aware when he played in the 1980s.  (SAC ¶ 253.)  The SAC also alleges that Harris has had thyroid surgery and that, since his deposition in this case, he has received "laboratory results that showed a large spike in his kidney creatine levels" (*Id.*)  But Harris has offered no factual allegations purporting to tie these conditions to any misrepresentation or concealment by any defendant.

shoulders, ankles, knees, hips, feet, hands, wrist, gastric syndrome, and hearing and balance.  (Block Dec. Ex. 22 at 3566.).  And in a February 2008 deposition in a workers' compensation case, Graham, represented by his counsel here (Mr. Byrne) testified that he was suffering from pain in his shoulders, knees, hips, lower back, hands, legs, and toes.  (Block Dec. Ex. 24 at 66:11-68:25, 69:9-21, 73:21-74:17, 76:7-79:3, 79:19-22, 80:22-81:6; *see also* Block Dec. Ex. 23 at 259:23-261:11.)  Accordingly, based on these undisputed facts, Graham's claims – which are only for "muscular/skeletal injuries" (SAC ¶ 37) – further described as "pain in both shoulders, neck, hips, lower back, both elbows, both hamstrings, his fingers, wrists, left toe and right knee" (*id.* ¶ 251) – are time-barred.

**Killings** specifically alleged that he sprained an ankle while practicing with the Vikings in 2003 and that, due to pressure from the head coach, he took medications so that he could continue to practice, and that he now "has constant pain in his … ankles."  February 3 Order at 16.  At deposition, Killings admitted that he has had this constant pain – including "in his back, shoulders, knees, ankles and hands" (SAC ¶ 258) – since he retired from football in 2007. (Block Dec. Ex. 25 at 329:14-330:3, 331:14-332:6, 346:9-347:10).  In 2008, Killings filed a workers compensation claim relating to these same conditions. (*Id.* at 324:14-326:15; Block Dec. Ex. 26 at 102.)  The SAC also alleges that, "after retiring from professional football, Mr. Killings also experienced an inflamed gall bladder, which necessitated the removal of the entire organ in emergency surgery."  (SAC ¶ 258.)  Leaving aside that Killings has not pled with particularity any claim related to his gall bladder, that surgery occurred in 2010.  (Block Dec. Ex. 25 at 336:6-338:6, Ex. 27 at 11:6-11.)  Accordingly, Killings' claims are time-barred.[12]

**Massey** specifically alleged that the Lions had pressured him to play despite an ankle injury, that the club gave him medication to do so, and that he now has constant pain in his ankles.  February 3 Order at 14.  He now makes similar allegations against the Saints.  (*See* n. 3 above.)  But at deposition,

---

[12] Killings also alleges that he was recently diagnosed with hypertension (SAC ¶ 258.)  The SAC offers no allegations tying that condition to any misrepresentation or concealment by any defendant.  Insofar as plaintiffs seek to rest on the general allegation that hypertension is a of muscular/skeletal pain (SAC ¶ 199), any such claim would also be time-barred.  *See, e.g.*, *Morris v. Minn. Mining & Mfg. Co.*, 2015 WL 1757465, at *4-5 (D. Md. Apr. 16, 2015) (claims for "progressive" injuries accrue at the first instance of harm; statute of limitations is not tolled for symptoms that progress or worsen over time).

Massey confirmed that he has had ankle pain ever since he stopped playing football in 1998.  (Block Dec. Ex. 28 at 256:11-256:19; *see also id.* 255:15-22 (stating that he also had knee pain ever since he stopped playing football)).)  He further confirmed that he has been unable to exercise regularly since 2010 because of his ankle issues, a fact that he then attributed to injuries sustained while playing in the NFL.  (*Id.* at 259:6-260:5.)  Massey filed for NFL disability benefits related to his ankle (and other body parts) in 1999.  (Block Dec. Ex. 29 at 3515.)  And in 2009, Massey filed a workers' compensation claim related to his NFL injuries, including his ankle; he received an award for that claim in 2011.  (Block Dec. Ex. 28 at 267:18-270:7, Ex. 30 at 4, 6, Ex. 31 at 82.)  Accordingly, those claims are time-barred.[13]

**Carreker.**  In addition to his "resistance" to medication claim,[14] Carreker seeks to recover for "gouty arthritis" and "constant pain in his neck, back, ankles, knees and shoulders," although the SAC offers no particularized allegations indicating that those conditions were proximately caused by any misrepresentation or concealment by any defendant.  (SAC ¶ 255.)  Those claims are time-barred as a matter of undisputed fact.  Carreker was diagnosed with gouty arthritis in 2008.  (*Id.*)  And at deposition he testified that he has had pain in his neck, toe, hands and knees since he stopped playing football in 1991.  (Block Dec. Ex. 32 at 210:15-211:14, 212:3-213:18; 216:4-18, 227:19-228:11, 229:8-230:1, 276:17-279:16.)  In 2004, he filed a disability claim with the NFL related to these conditions.  (*Id.* at 269:8-270:14, 275:20-282:10; Block Dec. Ex. 33 at 203, 206-07.)  In 2009, represented by the same counsel representing him here (Mr. Owens), he also filed a workers' compensation claim related to these injuries.  (Block Dec. Ex. 32 at 298:13-299:24; Ex. 34 at 161, 163.)

## 2. Plaintiffs Who Have Failed To State a Claim With Particularity

Should the Court determine that any of the newly amended claims are sufficiently pled, most should similarly be subject to summary judgment on statute of limitations grounds.

---

[13] In Paragraph 21, the SAC alleges that "the only injuries of which [Massey] is aware are kidney damage and the muscular/skeletal injuries discussed above."  But no kidney damage is discussed "above" – or, for that matter "below," and the SAC purports to offer no allegations indicating that he suffered kidney damage proximately caused by any wrongful conduct of any defendant.

[14] Further discovery is needed regarding the timing of this diagnosis, as well as on the (highly dubious) proposition that a person can build up "resistance" to anti-inflammatories.

There can be no question that the statute of limitations would bar any claim brought by Etopia **Evans**, as her husband Charles died in 2008.  (*See* SAC ¶ 248.)  There is no conceivable argument that she could offer about a "latent" injury to him that emerged only after May 2012.

**Goode** alleges that he "suffers from numbness in his arms and legs and constant pain in his neck, back, elbows, wrists, feet, knee and ankle."  (SAC ¶ 259.)  Goode testified at deposition that he has experienced this numbness and pain on a recurring basis ever since his playing career ended in 1993.  (Block Dec. Ex. 35 at 162:21-164:7; Block Dec. Ex. 36 at 72:18-23; 73:2-10; 73:24-25; 74:4-8; 75:2-4; 75:8-10; 75:23-76:1; 76:10-15; 89:22-90:11.)  Represented by the same counsel representing him here (Mr. Owens), Goode filed (and later settled) a workers' compensation claim related to these injuries in 2008.  (Block Dec. Ex. 37 at 12-13; *see also* Block Dec. Ex. 36 at 100:3-101:9; Block Dec. Ex. 38.)  Accordingly, Goode's claims based on muscular/skeletal injuries, even if pled adequately, would be time-barred.[15]

**King** alleges that he "now lives with constant pain" and that the "same left forearm and shoulder and back that were 'fixed' by Club doctors bring pain to [his] daily life."  (SAC ¶ 249.)  But at deposition, King admitted that he has had pain in his forearm, shoulder, and back since 2010, when he stopped playing football in the NFL.  (Block Dec. Ex. 40 at 310:6-312:7, 322:24-323:4.)  In 2011 and February 2012, King filed workers' compensation claims related to these injuries in Michigan and California.  (*Id.* at 330:2-9; Block Dec. Ex 41.)  Claims based on these injuries would therefore be time-barred even if they had been pled with particularity against any defendant.

**Lofton** alleges that he "currently lives with intense pain every day. His back, neck, shoulders, elbow, wrists, hands, and hips constantly hurt.  He has limited ability to exercise and has recently developed pain in his knees and the lower part of his legs."  (SAC ¶ 246.)  Lofton filed a workers'

---

[15] Goode also alleges that he was diagnosed with kidney cancer in 2014.  The SAC does not allege that *cancer* is caused by any of the medications about which plaintiffs complain or by any misrepresentation or concealment by any defendant.   (*See* SAC ¶¶ 197-211.)  The SAC also says that "[j]ust last week" Goode "began experiencing new complications related to his kidneys" (SAC ¶ 259); but Goode was diagnosed with kidney deficiency in 2010.  (Block Dec. Ex. 39 at 40-41; *see also* Block Dec. Ex. 36 at 117:2-118:13.)

compensation claim in October 2010 for these same ailments. (Block Dec. Ex. 42 at 174:21-179:17; 181:21-183:18; *see also* Block Dec. Ex. 43 at 842.)  Lofton also filed a disability claim with the NFL in 2011 related to his cervical and lumbar spine, knees, shoulders, ankles, feet, and wrists. (Block Dec. Ex. 44 at 28).  Accordingly, Lofton's claims based on alleged muscular/skeletal injuries are time-barred.[16]

**Sadowski** alleges that he "lives with constant pain in his back, hips, wrists, knees, ankles, and shoulders," and that his "weight is increasing due to his inability to exercise." (SAC ¶ 247.)  But Sadowski testified at deposition that he has had this pain ever since he retired. (Block Dec. Ex. 45 at 237:22-238:14.)  In 2009, represented by the same counsel representing him here (Mr. Owens), Sadowski filed a workers' compensation claim against each team for which he had played related to his head, neck, upper extremities, leg, and "multiple" other ailments. (Block Dec. Ex. 46 at 38, 44-46; *see also* Block Dec. Ex. 45 at 281:17-285:15.)  In a 2008 deposition in an earlier workers compensation proceeding, Sadowski testified that he had "pain in my shoulders, my neck, middle back, lower back, through the upper chest area … .  I get pain when I sit in a fixed position through my hips, down into my legs, my knees, pain in my – the top part of my foot down into my toe, mostly big toe." (Block Dec. Ex. 47 at 42:19-43:8.)  Again, therefore, based on these undisputed facts, Sadowski's claims would be time-barred even if he had pled them with particularity.

### D.    Any Claims for Medical Monitoring Are Also Time-Barred.

To the extent that any plaintiff (other than Walker) contends that his injury is "a substantially-increased risk" of developing *future* musculoskeletal or internal organ injuries (*see, e.g.*, SAC ¶ 320), any such claim would also be time-barred.  Even if such a remedy were available under the applicable state substantive laws, the procedural limitations question, governed by Maryland law, would be the same.  Any "increase" to the risk of developing ailments later in life based on medications taken while

---

[16] The SAC avers that "at this time, the injuries of which [Lofton] is aware are damage to his internal organs and the muscular/skeletal injuries discussed above." (SAC ¶ 33.)  But no organ damage is discussed "above" (or "below") and there are no allegations of proximate causation of any "organ" damage to Lofton caused by any misrepresentation or concealment by any defendant.  If this was intended to refer to the elevated creatinine levels that Lofton testified to at his deposition, undisputed evidence establishes that that diagnosis occurred in 2009 or 2010. (Block Dec. Ex. 42 at 186:16-187:6.)

playing football necessarily occurred and accrued while plaintiffs were playing football and ingesting the medications.  Those careers ended prior to May 2012 and any such claims are therefore time-barred. *See, e.g.*, *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 75-76 (Md. 2013), *reconsideration granted in part on other grounds,* 71 A.3d 150 (Md. 2013) ("[E]xposure itself and the concomitant need for medical testing is the compensable injury … .") (citation omitted).

## CONCLUSION

For the reasons stated above, nearly all of the claims that this Court previously found to be insufficiently pled remain insufficiently pled, and most of those claims, as well as the remaining claims, are time-barred.  The Court should accordingly enter an order granting dismissal and summary judgment as reflected in the proposed order filed herewith.

DATED: March 15, 2017

Respectfully submitted,

COVINGTON & BURLING LLP

By:      /s/  Sonya D. Winner
    Sonya D. Winner (Bar No. 200348)
    swinner@cov.com
    COVINGTON & BURLING LLP
    One Front Street
    San Francisco, CA 94111-5356
    Telephone: (415) 591-6000
    Facsimile: (415) 591-6091

    Allen Ruby (Bar No. 47109)
    allen.ruby@skadden.com
    SKADDEN, ARPS, SLATE,
      MEAGHER, & FLOM LLP
    525 University Avenue, Suite 1400
    Palo Alto, CA 94301
    Telephone: (650) 470-4660
    Facsimile: (650) 798-6550

    Daniel N. Nash (*pro hac vice*)
    dnash@akingump.com
    AKIN GUMP STRAUSS HAUER &
      FELD LLP
    1333 New Hampshire Ave., NW
    Suite 1000
    Washington, DC 20036
    Telephone: (202) 887-4000
    Facsimile: (202) 887-4288

    Attorneys for Defendants