SONYA D. WINNER (Bar No. 200348)
swinner@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091

ALLEN RUBY (Bar No. 47109)
allen.ruby@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone:  (650) 470-4660
Facsimile:  (650) 798-6550

Attorneys for Defendants

*Additional counsel listed on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ETOPIA EVANS, *et al.*,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>ARIZONA CARDINALS FOOTBALL CLUB, LLC, *et al.*,<br><br>　　　Defendants. | Civil Case No.: 3:16-CV-01030-WHA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON WORKERS' COMPENSATION EXCLUSIVITY**<br><br>Date:  July 13, 2017<br>Time: 8:00 a.m.<br>Dept:  Courtroom 8<br>Judge: Honorable William Alsup |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.........................................................................................................ii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT...................................1

MEMORANDUM OF POINTS AND AUTHORITIES..............................................................1

ARGUMENT ...............................................................................................................................2

      I.      Workers' Compensation Provides the Exclusive Remedy for the Workplace
              Injuries Alleged Here ...............................................................................................3

      II.     Undisputed Facts Establish That No Exception to Workers' Compensation
              Exclusivity Applies Here ..........................................................................................8

             A.      Workers' compensation exclusivity applies unless the employer
                      deliberately intended to injure the plaintiff.....................................................8

             B.      Undisputed facts establish that there was no intent to injure.....................11

CONCLUSION..........................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Indus. Comm'n*,
   474 P.2d 242, 242-43 (Colo. Ct. App. 1970) ............................................................ 6

*Arendell v. Auto Parts Club, Inc.*,
   29 Cal. App. 4th 1261 (1994) ..................................................................................... 9

*Banks v. Virginia Elec. & Power Co.*,
   205 F.3d 1332 (4th Cir. 2000) .................................................................................... 2

*Bayless v. Philadelphia Nat'l League Club*,
   472 F. Supp. 625 (E.D. Pa. 1979), *aff'd*, 615 F.2d 1352 (3d Cir. 1980)............... 5, 12

*Beck v. Hamann*,
   56 N.W.2d 837, 838, 840 (Wis. 1953) ...................................................................... 10

*Behrens v. Fayette Mfg. Co.*,
   4 Cal. App. 4th 1567 (1992), *modified* (Apr. 16, 1992) .............................................. 8

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Rockwell Int'l Corp.*,
   756 F. Supp. 492 (D. Colo. 1991), *aff'd*, 7 F.3d 1487 (10th Cir. 1993) ...................... 3

*Boyer v. Weyerhaeuser Co.*,
   39 F. Supp. 3d 1036, 1043 (W.D. Wis. 2014) ............................................................. 6

*Breland v. Arena Football One, LLC*,
   No. 15-cv-2258, 2017 WL 1954240 (E.D. La. May 11, 2017) .................................... 5

*Bulis v. Di Lorenzo*,
   142 A.D.2d 707, 531 N.Y.S.2d 107 (N.Y. App. Div. 1988) ...................................... 13

*Cty. of Dane v. Labor & Indus. Review Comm'n*,
   759 N.W.2d 571 (Wis. 2009)...................................................................................... 4

*DePiano v. Montreal Baseball Club, Ltd.*,
   663 F. Supp. 116 (W.D. Pa. 1987), *aff'd*, 838 F.2d 1205 (3d Cir. 1988) .............. 5, 12

*Digliani v. City of Fort Collins*,
   873 P.2d 4 (Colo. Ct. App. 1993) ............................................................................... 8

*EEOC v. Interstate Hotels, LLC*,
   No. C 04-04092 WHA, 2005 WL 885604 (N.D. Cal. Apr. 14, 2005) (Alsup, J.)..................... 11

*Ellis v. Rocky Mtn. Empire Sports, Inc.*,
   602 P.2d 895 (Colo. Ct. App. 1979) ................................................................ 3, 5, 8, 9

*Ferrer v. Host Int'l, Inc.*,
   No. LACV 16-06798, 2017 WL 902848 (C.D. Cal. Mar. 7, 2017)............................................. 11

*Flowmaster, Inc. v. Superior Court*,
   16 Cal. App. 4th 1019 (1993) .................................................................................................. 8

*Gambrell v. Kansas City Chiefs Football Club, Inc.*,
   562 S.W.2d 163 (Mo. Ct. App. 1978)...................................................................................... 5

*Gantt v. Sec., USA, Inc.*,
   356 F.3d 547 (4th Cir. 2004) .................................................................................................. 10

*Gunnell v. Metrocolor Labs., Inc.*,
   92 Cal. App. 4th 710 (2001) .................................................................................................. 9

*H & H Warehouse v. Vicory*,
   805 P.2d 1167 (Colo. Ct. App. 1990) ...................................................................................... 7

*Hauch v. Connor*,
   435 A.2d 1207 (Md. 1983) ................................................................................................. 2, 4

*Hildebrandt v. Whirlpool Corp.*,
   364 N.W.2d 394 (Minn. 1985)............................................................................................... 13

*Ihama v. Bayer Corp.*,
   No. C 05-03483 WHA, 2005 WL 3096089 (N.D. Cal. Nov. 14, 2005) (Alsup, J.) .................. 11

*Jenkins v. Sabourin*,
   311 N.W.2d 600 (Wis. 1981)................................................................................................... 7

*Jenson v. Emp'rs Mut. Cas. Co.*,
   468 N.W.2d 1 (Wis. 1991)............................................................................................. 3, 8, 10

*Johnson v. CVS Pharmacy, Inc.*,
   No. C 10-03232 WHA, 2011 WL 4802952 (N.D. Cal. Oct. 11, 2011) (Alsup, J.) ..................... 3

*Johnson v. Mountaire Farms of Delmarva, Inc.*,
   503 A.2d 708 (Md. 1986) ...................................................................................................... 10

*Lazo v. Mobil Oil Ref. Corp.*,
   No. CV 14-1072 ABC (JCX), 2014 WL 12596483 (C.D. Cal. Mar. 17, 2014) .......................... 6

*Martin v. Casagrande*,
   159 A.D.2d 26 (N.Y. App. Div. 1990) ............................................................................. 5, 12

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .................................................................................................. 4

*Melendrez v. Ameron Int'l Corp.*,
   240 Cal. App. 4th 632 (2015) .................................................................................................. 4

*Miklosy v. Regents of Univ. of Cal.*,
    44 Cal. 4th 876 (2008) .................................................................................. 11

*Nation v. Certainteed Corp.*,
    84 Cal. App. 3d 813 (1978) ............................................................................. 7

*Newton v. Thomason*,
    22 F.3d 1455 (9th Cir. 1994) ........................................................................... 2

*Nguyen v. Durham Sch. Servs. L.P.*,
    No. SACV 15-1243, 2016 WL 3436381 (C.D. Cal. June 16, 2016) ......................... 11

*Portnoy v. Veolia Transp. Servs., Inc.*,
    489 F. App'x 228 (9th Cir. 2013) ..................................................................... 3

*Rivers v. New York Jets*,
    460 F. Supp. 1233 (E.D. Mo. 1978) .................................................................. 5

*Rodriquez v. Nurseries, Inc.*,
    815 P.2d 1006 (Colo. Ct. App. 1991) .............................................................. 11

*Saxhaug v. Forsyth Leather Co.*,
    31 N.W.2d 589 (Wis. 1948) ........................................................................... 11

*Schwindt v. Hershey Foods Corp.*,
    81 P.3d 1144 (Colo. Ct. App. 2003) .............................................................. 9, 10

*Segui v. CSC Sugar LLC*,
    Civ. A. No. 15-951, 2015 WL 4713699 (E.D. Pa. Aug. 7, 2015) ............................ 4

*Stalnaker v. Boeing Co.*,
    186 Cal. App. 3d 1291 (1986) .......................................................................... 8

*Thomas v. Starz Entm't LLC*,
    No. 2:15 CV 09239, 2016 WL 844799 (C.D. Cal. Feb. 29, 2016) ......................... 11

*Travelers Ins. Co. v. Savio*,
    706 P.2d 1258 (Colo. 1985) ............................................................................. 4

*Vuillemainroy v. Am. Rock & Asphalt*,
    70 Cal. App. 4th 1280 (1999) ..................................................................... 10, 11

*West Bend Mut. Ins. Co. v. Berger*,
    531 N.W.2d 636 (Wis. Ct. App. 1995) .......................................................... 8, 10

**Statutes**

77 Pa. Cons. Stat. § 481 ...................................................................................... 4

Ariz. Rev. Stat. Ann. § 23-1022 ............................................................................. 4

CAL. LAB. CODE § 3600.5 ......................................................................................................... 6

CAL. LAB. CODE § 3602 ...................................................................................................... 1, 3

CAL. LAB. CODE § 4553 ...................................................................................................... 8, 9

CAL. LAB. CODE § 5500.5 ........................................................................................................ 6

COLO. REV. STAT. § 8-41-102 ............................................................................................. 1, 3

COLO. REV. STAT. § 8-41-104 ............................................................................................. 1, 3

COLO. REV. STAT. § 8-41-301(c) ............................................................................................. 6

FLA. STAT. § 440.11 .................................................................................................................. 4

GA. CODE ANN. § 34-9-11 ........................................................................................................ 4

ILL. COMP. STAT. 305/5 ............................................................................................................ 4

ILL. COMP. STAT. 305/11 .......................................................................................................... 4

IND. CODE § 22-3-2-6 ............................................................................................................... 4

LA. REV. STAT. ANN. § 23:1032 .............................................................................................. 4

MASS GEN. LAWS ch. 152, § 24 ............................................................................................... 4

MD. CODE ANN., LAB. & EMPL. § 9-101 ............................................................................... 10

MD. CODE ANN., LAB. & EMPL. § 9-501 ............................................................................... 10

MD. CODE ANN., LAB. & EMPL. § 9-509 ........................................................................... 4, 10

MICH. COMP. LAWS § 418.131 ................................................................................................. 4

MINN. STAT. § 176.031 ............................................................................................................. 4

MO. REV. STAT. § 287.120 ........................................................................................................ 4

N.C. GEN. STAT. § 97-3 ............................................................................................................. 4

N.C. GEN. STAT. § 97-10.1 ........................................................................................................ 4

N.J. STAT. ANN. § 34:15-8 ........................................................................................................ 4

N.Y. WORKERS' COMP. LAW § 29(6) ....................................................................................... 4

OHIO REV. CODE ANN. §4123.74 ............................................................................................. 4

TENN. CODE. ANN. § 50-6-108(a) ............................................................................................ 4

Tex. Lab. Code Ann. § 408.001 ...................................................................... 4

Wash. Rev. Code § 51.32.010 ....................................................................... 4

Wis. Stat. § 102.03 ................................................................... 1, 4, 7, 10

**Other Authorities**

1-1 Larson's Workers' Compensation Law § 1.01 ................................. 3

1-10 Larson's Workers' Compensation Law § 10.09 ............................ 7

2-22 Larson's Workers' Compensation Law § 22.04 ............................ 5

2-22 Larson's Workers' Compensation Law § 22.04 .......................... 12

9-100 Larson's Workers' Compensation Law § 100.03 ......................... 4

9-103 Larson's Workers' Compensation Law § 103.03 .................... 9, 10

14-144 Larson's Workers' Compensation Law § 144.01 ........................ 2

Fed. R. Civ. P. 56(c) ..................................................................... 2

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 13, 2017, at 8:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable William Alsup, located at 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California 94102, defendants Chargers Football Company, LLC ("Chargers"), PDB Sports, Ltd. ("Broncos"), and Green Bay Packers, Inc. ("Packers") will and hereby do move for summary judgment pursuant to Federal Rule of Civil Procedure 56 because plaintiffs' claims are precluded by workers' compensation exclusivity.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Daniel Nash and exhibits, the pleadings and papers on file in this action, any other such matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The only remaining claims are Reggie Walker's intentional misrepresentation claim against the Chargers and Alphonso Carreker's intentional misrepresentation claims against the Broncos and Packers. *See* Dkt. No. 224 at 14. These claims are barred by the workers' compensation laws of California, Colorado, and Wisconsin, where Walker and Carreker practiced and played for the Chargers, Broncos, and Packers, respectively. Each state's law expressly provides that, with narrow exceptions not relevant here, workers' compensation is the exclusive remedy for employees seeking to recover for injuries incurred during the course and scope of their employment. *See* CAL. LAB. CODE § 3602; COLO. REV. STAT. §§ 8-41-102, -104; WIS. STAT. §102.03(2). And, to reinforce the point, both plaintiffs have already filed for workers' compensation benefits for some of the same injuries for which they have sought recovery in this lawsuit.

Workers' compensation exclusivity can be avoided only by proof that the employer deliberately intended to cause the harm alleged. Undisputed facts demonstrate that no such intent exists here. Both Walker and Carreker testified that their clubs never *intentionally* sought to injure them. Indeed, the "return-to-play" motive alleged in this litigation is fundamentally incompatible

1   with an intent to deliberately harm the very employees who make the clubs successful, as

2   numerous courts have held in similar cases involving professional athletes.

3          At bottom, Walker and Carreker seek compensation for injuries and disabilities that

4   allegedly developed while working for their employers and while performing their jobs.  But the

5   workers' compensation system is already designed to provide just that, and to do so on an exclusive

6   basis.

7                                          **ARGUMENT**

8          Summary judgment is appropriate where the pleadings, discovery, and affidavits show that

9   there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

10  matter of law."  FED. R. CIV. P. 56(c).  Here, summary judgment is warranted because the

11  undisputed evidence and governing law establish that workers' compensation provides the

12  exclusive remedy for plaintiffs' alleged injuries.

13         In this diversity action transferred from the District of Maryland, this Court applies

14  Maryland choice-of-law principles.  *See Newton v. Thomason*, 22 F.3d 1455, 1459 (9th Cir. 1994)

15  (citing *Van Dusen v. Barrack*, 376 U.S. 612, 642 (1964)).  Recognizing that common-law damages

16  actions for workplace injuries "are now barred by virtually all workmen's compensation statutes in

17  this country," Maryland law "will enforce a bar created by the exclusive remedy statute of any state

18  in which the employer may be liable for workmen's compensation benefits."  *Hauch v. Connor*,

19  435 A.2d 1207, 1211-12 (Md. 1983); *see Banks v. Virginia Elec. & Power Co.*, 205 F.3d 1332 (4th

20  Cir. 2000) (Table) ("Under Maryland choice-of-law principles," a suit by an employee against an

21  employer "will be barred pursuant to another jurisdiction's workers' compensation laws if the []

22  employer could also be held liable for workers' compensation benefits to the employee in the other

23  jurisdiction."); *see also* 14-144 Larson's Workers' Compensation Law § 144.01 (stating same

24  general rule).

25         As demonstrated below, these claims are barred by the workers' compensation laws of

26  California (for Walker's claim against the Chargers), Colorado (for Carreker's claim against the

27  Broncos), and Wisconsin (for Carreker's claim against the Packers).  Those three states—like all

28  others—make workers' compensation the exclusive remedy for virtually all job-related injuries,

including injuries caused by intentional torts. *See, e.g.*, *Portnoy v. Veolia Transp. Servs., Inc.*, 489 F. App'x 228, 228–29 (9th Cir. 2013) (affirming summary judgment on intentional tort claims "preempted by California's workers' compensation scheme"); *Bldg. & Constr. Trades Dep't, AFL-CIO v. Rockwell Int'l Corp.*, 756 F. Supp. 492, 495 (D. Colo. 1991) (holding that employees' intentional misrepresentation and concealment claims were barred by the exclusivity provisions of Colorado's Workmen's Compensation Act), *aff'd*, 7 F.3d 1487 (10th Cir. 1993); *Ellis v. Rocky Mtn. Empire Sports, Inc.*, 602 P.2d 895, 896 (Colo. Ct. App. 1979) (professional football player's claim alleging that his club "intentionally required him to engage in contact football drills before he had fully recovered from [his] off-season knee injury, and that this activity caused further injury to his knee" was barred by Colorado's workers' compensation exclusivity); *Jenson v. Emp'rs Mut. Cas. Co.*, 468 N.W.2d 1, 6 (Wis. 1991) (stating that occupational injuries caused by intentional conduct lie within the exclusive purview of the Wisconsin Worker's Compensation Act).

## I.   Workers' Compensation Provides the Exclusive Remedy for the Workplace Injuries Alleged Here

"[T]he basic operating principle[] [of workers' compensation] is that," in lieu of a common-law damages action, "an employee is automatically entitled to certain benefits" for injuries "arising out of and in the course of employment or an occupational disease."  1-1 Larson's Workers' Compensation Law § 1.01.  The rationale for this rule is "the 'presumed compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability."  *Johnson v. CVS Pharmacy, Inc.*, No. C 10-03232 WHA, 2011 WL 4802952, at *6–7 (N.D. Cal. Oct. 11, 2011) (Alsup, J.) (quoting *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 708 (1994)).  Thus, the laws in California, Colorado, and Wisconsin each provide that workers' compensation shall be the exclusive no-fault remedy for employees' claims against their employers for injuries incurred in the scope of their employment.  CAL. LAB. CODE § 3602 (where act applies, "the right to recover compensation is . . . the sole and exclusive remedy of the employee or his or her dependents against the employer"); COLO. REV. STAT. §§ 8-41-102, -104 (abolishing "all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies"

against employer); WIS. STAT. §102.03(2) (where statutory requirements for compensation exist, "the right to the recovery of compensation . . . shall be the exclusive remedy against the employer").[1]

As the leading workers' compensation treatise makes clear, these "exclusivity rules" sweep broadly, "reliev[ing] the employer not only of common-law tort liability, but also of statutory liability under virtually all state statutes, as well as of liability in contract and in admiralty, for an injury covered by the compensation act."  9-100 Larson's Workers' Compensation Law § 100.03; *see, e.g.*, *Melendrez v. Ameron Int'l Corp.*, 240 Cal. App. 4th 632, 644 (2015) (California's act "requires that we liberally construe the [laws] 'in favor of *awarding work[ers'] compensation*, not in permitting civil litigation.'") (citing CAL. LAB. CODE § 3202) (alteration in original); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1264 (Colo. 1985) (the "broad language" of the Act "articulates a legislative decision to establish exclusive as well as comprehensive remedies for injuries that are covered by the Act"); *Cty. of Dane v. Labor & Indus. Review Comm'n*, 759 N.W.2d 571, 582 (Wis. 2009) ("the statute must be broadly construed in order to best promote its statutory purposes," including preventing "the delays that might arise from protracted litigation").

---

[1] Even if Walker and Carreker could file claims in states other than where they practiced and played for the remaining defendants, it would make no difference, as suits against employers for workplace injuries "are now barred by virtually all workmen's compensation statutes in this country."  *Hauch*, 453 A.2d at 1211; *see Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590–91 (9th Cir. 2012) (conflict-of-law "problem only arises if differences in state law are material, that is, if they make a difference in this litigation"); *see, e.g.*, *Segui v. CSC Sugar LLC,* Civ. A. No. 15-951, 2015 WL 4713699, at *2 (E.D. Pa. Aug. 7, 2015) (finding choice-of-law analysis between Pennsylvania and New Jersey "unnecessary" because "both states' workers' compensation laws bar this action").  All twenty-two jurisdictions in which the NFL clubs play games have exclusivity provisions requiring employers to accept no-fault liability for on-the-job injuries.  *See* ARIZ. REV. STAT. ANN. § 23-1022 ("The right to recover compensation pursuant to this chapter for injuries sustained by an employee or for the death of an employee is the exclusive remedy against the employer or any co-employee acting in the scope of his employment"); FLA. STAT. § 440.11;  GA. CODE ANN. § 34-9-11; 820 ILL. COMP. STAT. 305/5, 820 ILL. COMP. STAT. 305/11; IND. CODE § 22-3-2-6; LA. REV. STAT. ANN. § 23:1032; MASS GEN. LAWS ch. 152, § 24; MD. CODE ANN., LAB. & EMPL. § 9-509; MICH. COMP. LAWS § 418.131; MINN. STAT. § 176.031; MO. REV. STAT. § 287.120; N.C. GEN. STAT. § 97-3, 97-10.1; N.J. STAT. ANN. § 34:15-8; N.Y. WORKERS' COMP. LAW § 29(6); OHIO REV. CODE ANN. §4123.74; 77 PA. CONS. STAT. § 481; TENN. CODE. ANN. § 50-6-108(a); TEX. LAB. CODE ANN. § 408.001; WASH. REV. CODE § 51.32.010.

"[P]rofessional athletes," including NFL players, receive "the same protection under compensation law as is enjoyed by everyone else who works for a living."  2-22 Larson's Workers' Compensation Law § 22.04.  Indeed, numerous courts have held barred, due to workers' compensation exclusivity, state-law tort claims by NFL players and other professional athletes of the same kind alleged here.  For instance:

- In *Breland v. Arena Football One, LLC*, No. 15-cv-2258, 2017 WL 1954240, at *2 (E.D. La. May 11, 2017), a professional arena football player's misrepresentation and fraud claims alleging that the Arena Football League "knew of the potential risks associated with [the alleged injury] but intentionally concealed them" and "fostered an environment of brutality and violence and ignored the wellbeing of its players for the sake of profit" were barred by the exclusivity provision of Louisiana's Act;

- In *Ellis v. Rocky Mountain Empire Sports, Inc.*, 602 P.2d 895, 896, 898 (Colo. Ct. App. 1979), a professional football player's intentional tort claims alleging that his club "intentionally required him to engage in contact football drills before he had fully recovered from [his] off-season knee injury, and that this activity caused further injury to his knee" were barred by the exclusivity provision of Colorado's Act;

- In *Gambrell v. Kansas City Chiefs Football Club, Inc.*, 562 S.W.2d 163, 164, 168 (Mo. Ct. App. 1978), a professional football player's fraud and deceit claims alleging that his club "false[ly]" "represented to plaintiff that his physical condition was good and that he was fit to play" when in fact he "was disabled as a result of prior injuries," and that he suffered injuries that "either would not have occurred . . . or were much more severe in extent than he would have received had he been physically fit to play football," were "squarely" barred by the exclusivity provision of Missouri's Act;

- In *Rivers v. New York Jets*, 460 F. Supp. 1233, 1238 (E.D. Mo. 1978), a professional football player's claims alleging that the club was "wrongfully concealing from [him] the true nature of his physical condition and injury" were barred by the exclusivity provision of New Jersey's Act;

- In *Bayless v. Philadelphia Nat'l League Club*, 472 F. Supp. 625, 627, 630 (E.D. Pa. 1979), *aff'd*, 615 F.2d 1352 (3d Cir. 1980), a professional baseball player's claims that his illness resulted from his club's "failure . . . to provide proper medical care in the administration of drugs" were barred by the exclusivity provision of Pennsylvania's Act;

- In *Martin v. Casagrande*, 159 A.D.2d 26, 30 (N.Y. App. Div. 1990), a professional hockey player's claims for intentional concealment and fraud regarding a knee injury suffered while playing were barred by the exclusivity provision of New York's Act; and

- In *DePiano v. Montreal Baseball Club, Ltd.*, 663 F. Supp. 116, 117-18 (W.D. Pa. 1987), *aff'd*, 838 F.2d 1205 (3d Cir. 1988), a professional baseball player's claims that his club "insisted on keeping [him] in the lineup despite his injury" were barred by the exclusivity provision of New York's Act.

1    Plaintiffs' claims here are no different.  Walker alleges that, in 2014, he returned to play

2   after spraining his left ankle; that a Chargers' team doctor gave him Toradol injections before and

3   during games; and that, as a result, he now "experiences pain in his ankles."  Second Amended

4   Complaint ("SAC") (Dkt. No. 189) ¶¶ 246, 272.  Carreker alleges that, while playing for the

5   Broncos and the Packers, he "regularly consumed enormous quantities of painkilling anti-

6   inflammatory drugs and muscle relaxers" provided by club athletic trainers, and that anti-

7   inflammatory drugs proved "ineffective" in treating a 2012 heart infection because of "the

8   resistance he had built up to such drugs . . . *during his playing career*."  SAC ¶¶ 255, 257

9   (emphasis added).  Both plaintiffs' allegations plainly pertain to acts that arose in the course of

10  their employment with their clubs.

11    Plaintiffs cannot avoid the workers' compensation bar by asserting that their injuries did not

12  manifest until after their playing careers.  Workers' compensation covers injuries incurred during

13  the course and scope of employment regardless of whether they first manifest themselves in or out

14  of the workplace.  *E.g.*, *Lazo v. Mobil Oil Ref. Corp.*, No. CV 14-1072 ABC (JCX), 2014 WL

15  12596483, at *2-3 (C.D. Cal. Mar. 17, 2014) (noting that "[n]umerous California cases indicate that

16  diseases that manifest after employment are subject to workers' compensation," "which provides

17  the exclusive remedy for [p]laintiffs' injury"); *Aetna Cas. & Sur. Co. v. Indus. Comm'n*, 474 P.2d

18  242, 242-43 (Colo. Ct. App. 1970) (holding Colorado Act covered employee's tenosing

19  tenosynovitis—even though she did not discover it until she had surgery two years after the

20  incident—because "she was injured in an accident arising out of and in the course of her

21  employment"); *Boyer v. Weyerhaeuser Co.*, 39 F. Supp. 3d 1036, 1043 (W.D. Wis. 2014)

22  (exclusivity rule barred former employee's tort claims although asbestos-related injuries did not

23  develop until after employment).

24    Workers' compensation also covers, and the exclusivity bar therefore extends to, claims

25  asserting occupational diseases and aggravation or increase of a previously sustained injury.  *E.g.*,

26  CAL. LAB. CODE § 5500.5 ("[o]ccupational disease or cumulative injury" are encompassed within

27  the workers' compensation system); *id.* § 3600.5 (special cumulative injury provision for

28  professional athletes); COLO. REV. STAT. § 8-41-301(c) (providing coverage when "injury or death

is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment"); *H & H Warehouse v. Vicory*, 805 P.2d 1167, 1169 (Colo. Ct. App. 1990) (holding employer liable under workers' compensation for medical expenses associated with aggravation of employee's existing cancer caused by work-related injury); WIS. STAT. § 102.03 (providing coverage for injuries sustained when "the employee is performing service growing out of and incidental to his or her employment" or "the accident or disease causing injury arises out of the employee's employment").

Similarly, injuries caused or exacerbated by medical care provided in the course of employment are covered injuries for purposes of workers' compensation exclusivity. *See, e.g.*, 1-10 Larson's Workers' Compensation Law § 10.09 ("[i]t is now uniformly held that aggravation of the primary injury by medical or surgical treatment is compensable"); *Jenkins v. Sabourin*, 311 N.W.2d 600, 604 (Wis. 1981) ("injury [to employee] in the course of [medical attention to a covered industrial injury] subjects the employer only to [workers'] compensation liability and not to damages in tort"); *Nation v. Certainteed Corp.*, 84 Cal. App. 3d 813, 815-16 (1978) (workers' compensation exclusivity barred tort action against employer alleging that industrial injury was aggravated by negligence of physician to whom the plaintiff was referred by employer for treatment).

Plaintiffs cannot dispute that they could bring workers' compensation claims for their alleged injuries. Both have already done so. Walker filed a workers' compensation claim in California against the Chargers in June 2016, which is currently pending. *See* Nash Decl. Ex. 1 at 14:8-17, 244:13-19; Ex. 2. He admitted that the injuries for which he seeks compensation in his workers' compensation case are among the injuries for which he seeks damages in this case. Nash Decl. Ex. 1 at 243:8-248:23. Carreker filed workers' compensation claims in both Colorado and California against the Broncos. *See* Nash Decl. Ex. 3 at 287:1-8, 292:20-301:10; Exs. 4, 5. Although he has not yet sought workers' compensation benefits relating to his alleged resistance to anti-inflammatory medication—the only non-time-barred claim he asserts—his prior claim alleged injuries to nearly every part of his body, including his head, neck, back, spine, upper and lower extremities, and internal injuries. Nash Decl. Ex. 3 at 298:13-301:10; Ex. 5.

1    In short, as in the numerous cases cited above, plaintiffs' tort claims are barred by

2    applicable workers' compensation laws.

3    **II.    Undisputed Facts Establish That No Exception to Workers' Compensation Exclusivity Applies Here**

4        Given the clear application of the workers' compensation laws to plaintiffs' alleged

5    workplace injuries, plaintiffs bear the burden of demonstrating that their claims fall "within a

6    recognized exception" to the exclusive remedy provisions of the relevant workers' compensation

7    laws.  *Flowmaster, Inc. v. Superior Court*, 16 Cal. App. 4th 1019, 1025 (1993); *see, e.g.*, *Behrens v.*

8    *Fayette Mfg. Co.*, 4 Cal. App. 4th 1567, 1574 (1992), *modified* (Apr. 16, 1992) ("Plaintiff, seeking

9    to be excluded from the general sweep of the exclusive remedy of workers' compensation, must

10   establish that the exception applies."); *Digliani v. City of Fort Collins*, 873 P.2d 4, 7 (Colo. Ct. App.

11   1993) (holding plaintiffs must show more than "merely alleging" exceptions to workers'

12   compensation benefits "in order to pursue common law remedies"); *West Bend Mut. Ins. Co. v.*

13   *Berger*, 531 N.W.2d 636, 639 (Wis. Ct. App. 1995) (holding claimant "must show" exceptions to

14   the exclusive remedies rule, which are to be "narrowly construed").  Plaintiffs cannot meet that

15   burden.

16       **A.  Workers' compensation exclusivity applies unless the employer deliberately intended to injure the plaintiff.**

17

18       Essentially all workplace injuries—even those resulting from an employer's "serious and

19   willful misconduct," CAL. LAB. CODE § 4553—are encompassed within workers' compensation

20   exclusivity.  There is no general "intentional tort exception" to workers' compensation exclusivity.

21   *E.g.*, *Stalnaker v. Boeing Co.*, 186 Cal. App. 3d 1291, 1299-1300 (1986) (rejecting plaintiff's

22   argument that any misconduct of an employer which may be characterized as "intentional" is

23   excluded from workers' compensation exclusivity); *Ellis*, 602 P.2d at 898 ("the basic principles"

24   governing workers' compensation exclusivity "are not changed" simply because a plaintiff alleges

25   an intentional tort); *Digliani*, 873 P.2d at 7 ("allowing claimants to avoid the statute's exclusive

26   remedy provision by merely alleging intentional torts by an employer . . . would be repugnant to

27   the [Colorado] Act"); *Jenson v. Emp'rs Mut. Cas. Co.*, 468 N.W.2d at 6 (claims arising from

28

8

1   occupational injuries caused by intentional conduct may be barred by workers' compensation

2   exclusivity).  As the leading treatise explains:

> Since the legal justification for the common-law action is the nonaccidental
> character of the injury from the defendant employer's standpoint, the common-law
> liability of the employer cannot, under the almost unanimous rule, be stretched to
> include accidental injuries caused by the gross, wanton, willful, deliberate,
> intentional, reckless, culpable, or malicious negligence, breach of statute, or other
> misconduct of the employer *short of a conscious and deliberate intent directed to
> the purpose of inflicting an injury*.

7   9-103 Larson's Workers' Compensation Law § 103.03 (emphasis added).

8       In California, where Walker played for the Chargers, even injuries caused by an employer's

9   "serious and willful misconduct" are explicitly governed by workers' compensation exclusivity.

10   CAL. LAB. CODE § 4553.  To fall outside the exclusivity ambit, the plaintiff must "allege[] and

11   prove[] that the employer acted deliberately *with the specific intent to injure the employee*."

12   *Arendell v. Auto Parts Club, Inc.*, 29 Cal. App. 4th 1261, 1265 (1994) (internal quotation marks

13   omitted, emphasis added); *see also Gunnell v. Metrocolor Labs., Inc.*, 92 Cal. App. 4th 710, 722

14   (2001) (finding the Act remained the exclusive employee remedy "notwithstanding an employer's

15   knowing failure to assure that the workplace is safe or the employer's fraud, deceit, or concealment

16   of a dangerous condition") (internal citations omitted).

17       In Colorado, where Carreker played for the Broncos, the only workplace injuries that fall

18   outside the state workers' compensation regime are those where the employer "deliberately

19   intended to cause the injury."  *Schwindt v. Hershey Foods Corp.*, 81 P.3d 1144, 1147 (Colo. Ct.

20   App. 2003); *Ellis*, 602 P.2d at 898 (Colorado Act provided exclusive remedy for professional

21   football player's intentional tort claims).  Even an allegation that the employer knew that its

22   conduct was "substantially certain" to cause injury or death, which plaintiffs do not allege here, is

23   insufficient to avoid the exclusivity bar.  *Schwindt*, 81 P.2d at 1146.  As the courts in Colorado have

24   explained, allowing an exception to exclusivity for anything less than a deliberate intention to harm

25   has a great "potential for abuse" and "once a breach is made in that dam to accommodate an

26   appealing case, it will be very difficult for the courts to know where to draw the line."  *Id.* (quoting

27   9-103 Larson's Workers' Compensation Law § 103.04).

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – WORKERS' COMP.   Case No.: 3:16-cv-01030-WHA

1   Wisconsin's Worker's Compensation Act is just as expansive.  The courts there have

2   explicitly rejected a general exception for "intentional torts."  *See Beck v. Hamann*, 56 N.W.2d

3   837, 838, 840 (Wis. 1953) (Wisconsin Act was exclusive remedy for plaintiff who alleged that

4   employer acted "deliberately, wantonly, wilfully, intentionally, in impatient anger, and in utter,

5   reckless and wanton disregard of the consequences"); *see also Jenson v. Emp'rs Mut. Cas. Co.*, 468

6   N.W.2d at 5 (affirming summary judgment for employer and rejecting employee's claim that

7   "injuries that are caused by intentional conduct" are not subject to workers' compensation

8   exclusivity).  The only recognized exception relating to intentional conduct applies where, unlike

9   here, an employee brings a suit against *a co-employee* for "an assault intended to cause bodily

10  harm."  *W. Bend Mut. Ins. Co. v. Berger*, 531 N.W.2d at 640; WIS. STAT. §102.03(2).[2]

11  Thus, the law in all three states at issue makes clear that proof that an employer knowingly

12  or "willfully" permitted an unsafe workplace is insufficient to overcome exclusivity.  *See, e.g.*,

13  *Schwindt v. Hershey Foods Corp.*, 81 P.3d at 1146-47 (workers' compensation exclusivity barred

14  personal injury action alleging that employer acted "in willful, wanton and reckless disregard for

15  the health and safety" of employees).  In fact, in these states, proof that an employer willfully and

16  unlawfully violated a safety statute is insufficient to avoid the exclusivity bar.  *See* 9-103 Larson's

17  Workers' Compensation Law § 103.03 ("breach of statute" insufficient); *Vuillemainroy v. Am. Rock*

18

19  ———————————————

[2]  Even if, contrary to their own sworn interrogatory responses as to which states' laws
20  govern their claims (Nash Decl. Exs. 6, 7), plaintiffs were to argue that Maryland law governs their
     claims, they would still be barred.  Maryland workers' compensation law specifically covers
21  injuries "caused by a willful or negligent act of a third person directed against a covered employee
     in the course of the employment of the covered employee," MD. CODE ANN., LAB. & EMPL. §§ 9-
22  101, -501, -509.  The only exception is "[i]f a covered employee is injured or killed as the result of
     the deliberate intent of the employer to injure or kill the covered employee[.]"  *Id.* § 9-509.  "[A]n
23  employer has acted with 'deliberate intention' . . . only where that employer had determined to
     injure an employee or employees within the same class and used some means to accomplish this
     goal."  *Johnson v. Mountaire Farms of Delmarva, Inc.*, 503 A.2d 708, 714 (Md. 1986).  It is not
24  enough that the employer's conduct was willful, wanton, reckless, or even when "that conduct is
     undertaken with a knowledge and appreciation of a high risk to another." *Gantt v. Sec., USA, Inc.*,
25  356 F.3d 547, 555 (4th Cir. 2004).  Indeed,

26          [e]ven if the alleged conduct goes beyond aggravated negligence, and includes such
            elements as knowingly permitting a hazardous work condition to exist, knowingly ordering
27          claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to
            work, or even wilfully and unlawfully violating a safety statute, this still falls short of the
            kind of actual intention to injure that robs the injury of accidental character.
28
     *Johnson*, 503 A.2d at 712 (quoting 2A A. Larson, supra, § 68.13, at 13-22 to 26 (emphasis
     omitted)).

1   *& Asphalt*, 70 Cal. App. 4th 1280, 1285 (1999) ("It is an expected part of the compensation bargain

2   that industrial injury will result from an employer's violation of health and safety, environmental

3   and similar regulations."); *Rodriquez v. Nurseries, Inc.*, 815 P.2d 1006, 1008 (Colo. Ct. App. 1991)

4   (violation of safety statute does not provide an exception to the Workers' Compensation Act);

5   *Saxhaug v. Forsyth Leather Co.*, 31 N.W.2d 589, 592 (Wis. 1948) (holding "employer's exclusive

6   liability is for compensation under the Workmen's Compensation Act," despite violation of safe

7   workplace statute).  That is so "[e]ven if the employer . . . *deliberately* failed to correct known

8   safety violations."  *Vuillemainroy*, 70 Cal. App. 4th at 1286 (emphasis added).  Any broader

9   interpretation would frustrate the goals of workers' compensation and "open[] a Pandora's box."

10  *Id.*.[3]

11      **B.  Undisputed facts establish that there was no intent to injure.**

12      Plaintiffs do not allege that any of the defendant clubs intended to harm them.  While they

13  do allege some intentional conduct—including that the clubs "intended" to deceive them through

14  their misrepresentations, SAC ¶ 307, and were aware of certain problems "associated" with the use

15  of medications, *e.g.*, *id.* ¶¶ 309, 246—those allegations do not come close to alleging the deliberate

16  *intent to injure* required to avoid exclusivity.  By definition, the clubs could not have intended an

17  _____

18      [3] Although California courts previously have recognized that the state's Workers'
Compensation Act does not preempt certain types of employer conduct that violate the public
policy of the state, *see, e.g.*, *Ihama v. Bayer Corp.*, No. C 05-03483 WHA, 2005 WL 3096089, at

19  *3 (N.D. Cal. Nov. 14, 2005) (Alsup, J.) (holding that California's Workers' Compensation Act did
not bar negligent supervision claim arising out of alleged disability discrimination); *EEOC v.

20  Interstate Hotels, LLC*, No. C 04-04092 WHA, 2005 WL 885604, at *3 (N.D. Cal. Apr. 14, 2005)
(Alsup, J.) (holding that allegations of national origin discrimination under Title VII and the

21  California Fair Employment and Housing Act were not preempted by the Workers' Compensation
Act), the California Supreme Court clarified in 2008 that the "public policy" exception to workers'

22  compensation exclusivity applies *only* to claims of wrongful termination known as *Tameny*
claims.  *See Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902-03 (2008) ("The exception

23  for conduct that 'contravenes fundamental public policy' is aimed at permitting a *Tameny* action to
proceed despite the workers' compensation exclusive remedy rule.").  Following *Miklosy*, "the

24  'fundamental public policy' exception is of exceedingly limited import" and, in any event, has no
application to the intentional misrepresentation claims here.  *See Thomas v. Starz Entm't LLC*, No.

25  2:15 CV 09239, 2016 WL 844799, at *8 (C.D. Cal. Feb. 29, 2016); *see also Nguyen v. Durham

26  Sch. Servs. L.P.*, No. SACV 15-1243, 2016 WL 3436381, at *2 (C.D. Cal. June 16, 2016)
(explaining that "the California Supreme Court [through *Miklosy*] has expressly limited [the]

27  application [of the so-called 'public policy' exception] to 'common law claims of wrongful
termination in violation of public policy,' also referred to as '*Tameny* claims.'"); *Ferrer v. Host

28  Int'l, Inc.*, No. LACV 16-06798, 2017 WL 902848, at *5 (C.D. Cal. Mar. 7, 2017) ("*Milosky* also
defined narrowly the public policy exception to the worker's compensation laws, limiting it to
*Tameny* claims for wrongful termination in violation of public policy.").

1   injury when even plaintiffs acknowledge that the exposure merely was "potentially dangerous" or

2   had "possible" side effects.  *Id.* ¶¶ 246, 255.

3          Furthermore, plaintiffs allege that "[t]he medications were provided to [them] for the *sole*

4   *purpose* of enabling [them] to practice and play through pain."  SAC ¶ 246 (emphasis added).

5   *See also* SAC ¶ 103 ("every Club . . . has a financial interest in returning players to the game as

6   soon as possible").  Thus, the Second Amended Complaint itself establishes that plaintiffs do not

7   and cannot contend that the clubs were intending to cause them injury.  *See* 2-22 Larson's Workers'

8   Compensation Law § 22.04 n.10 ("The business of a professional football team is to play

9   professional football, not injure its employees," citing *Pro-Football, Inc. v. Uhlenhake*, 558 S.E.2d

10  571, 576 (Va. Ct. App. 2002), *aff'd*, 574 S.E.2d 288 (Va. 2003)).  Like the professional baseball

11  player in *DePiano*, plaintiffs' allegation that their clubs "insisted on keeping" them on the field

12  "despite [their] injur[ies]," "disproves rather than supports" the application of any exception

13  "because it establishes a motive for [the team's] conduct other than an intention to injure

14  plaintiff[s]."  663 F. Supp. at 117; *see also Martin v. Casagrande*, 159 A.D.2d at 30 (finding "no

15  evidence that [Buffalo Sabres hockey team and medical staff] intended to harm" player given that

16  "[i]t is highly unlikely that defendants would do anything to injure him intentionally or to diminish

17  his trade value, which proved to be substantial"); *Bayless*, 472 F. Supp. at 627, 630 (professional

18  baseball player's claims that his illness resulted from his club's "failure . . . to provide proper

19  medical care in the administration of drugs" did not amount to a claim that the team intended to

20  harm the player).

21         Walker and Carreker's deposition testimony confirms that neither can dispute the

22  application of the workers' compensation exclusivity bar.  Each has conceded that his club(s) did

23  not harbor any intent to injure him.  Walker admitted that the Chargers' doctors and trainers were

24  not "trying to do anything to hurt [him] at all" when they were treating him.  Nash Decl. Ex. 1 at

25  209:1-11.  Likewise, Carreker repeatedly admitted that the Packers' doctors and athletic trainers

26  never intended to harm him when providing medications:  "No. I don't think they were trying to

27  harm me, or they lied to me or any way." Nash Decl. Ex. 3 at 144:13-24; 145:21-146:6; *see also id.*

28  308:16-309:24 (same for Broncos doctors and trainers).

1    These admissions are case dispositive.  *See, e.g.*, *Bulis v. Di Lorenzo*, 142 A.D.2d 707, 708,

2    531 N.Y.S.2d 107, 108 (N.Y. App. Div. 1988) (relying on "plaintiff's deposition testimony" to find

3    lack of evidence "that the defendant intended to harm" plaintiff, and noting that "plaintiff's version

4    of what occurred" confirms that there was "no intent to harm anyone"); *Hildebrandt v. Whirlpool*

5    *Corp.*, 364 N.W.2d 394, 396-97 (Minn. 1985) (because exclusivity exception requires a "conscious

6    and deliberate intent to inflict injury," plaintiffs' admission that employer's actions were motivated

7    "not by animosity but by its own financial advantage" "does not meet the narrow exception")

8    (internal quotation marks omitted).  Plaintiffs simply cannot prove that the clubs, doctors, and

9    trainers acted with a "deliberate intent to inflict an injury" when they have conceded—and the

10   undisputed facts establish—precisely the opposite.

**CONCLUSION**

12   For the foregoing reasons, plaintiffs' claims for intentional misrepresentation are barred by

13   workers' compensation exclusivity.  Summary judgment is warranted in favor of the Chargers,

14   Broncos, and Packers.

16   Date: June 8, 2017                        Respectfully submitted,

17                                             AKIN GUMP STRAUSS HAUER & FELD LLP

18                                             By:        /s/ Daniel L. Nash
19                                                 DANIEL L. NASH (*pro hac vice*)
                                                   dnash@akingump.com
20                                                 AKIN GUMP STRAUSS HAUER & FELD LLP
                                                   1333 New Hampshire Ave., NW
                                                   Washington, DC 20036
21                                                 Telephone: 202-887-4000
                                                   Facsimile: 202-887-4288
22
                                                   SONYA D. WINNER (Bar No. 200348)
23                                                 swinner@cov.com
                                                   COVINGTON & BURLING LLP
24                                                 One Front Street, 35th Floor
                                                   San Francisco, CA 94111-5356
25                                                 Telephone:  (415) 591-6000
                                                   Facsimile:  (415) 591-6091
26
                                                   ALLEN RUBY (Bar No. 47109)
27                                                 allen.ruby@skadden.com
                                                   SKADDEN, ARPS, SLATE, MEAGHER, &
28                                                     FLOM LLP
                                                   525 University Avenue, Suite 1400

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Palo Alto, CA 94301
Telephone:  (650) 470-4660
Facsimile:  (650) 798-6550

Attorneys for Defendants
PDB Sports, Ltd.
Green Bay Packers, Inc.
Chargers Football Company, LLC

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – WORKERS' COMP.    Case No.: 3:16-cv-01030-WHA