IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETOPIA EVANS, *et al.*, | No. C 16-01030 WHA |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| ARIZONA CARDINALS FOOTBALL CLUB, LLC, *et al.*, | |
| Defendants. | |

**INTRODUCTION**

In this action initially brought by thirteen plaintiffs against thirty-two defendants, the remaining three defendants move for summary judgment on the intentional misrepresentation claims asserted against them by the remaining two plaintiffs. The motion is **GRANTED**.

**STATEMENT**

The factual and procedural background of this action has been set forth in detail in prior orders (*see* Dkt. Nos. 168, 175, 224) and need not be repeated here. At this stage, the remaining claims are for intentional misrepresentation only, as follows:

> 1. By plaintiff Reggie Walker against defendant San Diego Chargers, based on allegations that (1) the club misrepresented that it cared about and prioritized players' health and safety when in fact it prioritized getting players to return to play, even when injured, at the cost of their health and safety; (2) in reliance on those

misrepresentations, Walker sprained his ankle during a game in 2014 but continued to play every game thereafter for the rest of his career with Toradol injections from the club doctor; and (3) as a result, Walker continues to experience pain in his ankles.

2. By plaintiff Alphonso Carreker against defendant Denver Broncos, based on allegations that (1) the club misrepresented that it cared about and prioritized players' health and safety when in fact it prioritized getting players to return to play, even when injured, at the cost of their health and safety; (2) in reliance on those misrepresentations, Carreker regularly consumed enormous quantities of anti-inflammatory drugs; and (3) as a result, Carreker underwent heart surgery in 2013 to drain inflammation from a heart infection after anti-inflammatory drugs proved ineffective due to the resistance he had built up during his playing career.

3. By plaintiff Carreker against defendant Green Bay Packers, based on the same allegations as against the Broncos.

The Chargers, Broncos, and Packers (collectively, "defendants") now move for summary judgment, contending that all three remaining claims are barred by workers' compensation exclusivity. Walker and Carreker (collectively, "plaintiffs") respond that their claims fall within an intentional harm exception to exclusivity. This order follows full briefing and oral argument.

**ANALYSIS**

**1.  LEGAL FRAMEWORK.**

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(a). A genuine dispute of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In deciding a motion for summary judgment, the court must believe the non-movant's evidence and draw all justifiable

2

inferences in their favor. *Id.* at 255. "The mere existence of a scintilla of evidence" or "some metaphysical doubt as to the material facts" in the non-movant's favor, however, will not suffice. *Id.* at 252, 261 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

The applicable law is not in dispute. Because this action transferred from the District of Maryland, the choice-of-law principles of Maryland apply. *See Newton v. Thomason*, 22 F.3d 1455, 1459 (9th Cir. 1994). Here, Maryland's choice of law will "enforce a bar created by the exclusive remedy statute of any state" in which the remaining defendants may be liable to the remaining plaintiffs for workers' compensation benefits. *See Hauch v. Connor*, 453 A.2d 1207, 1211 (Md. 1983). Thus, for purposes of this motion, California, Colorado, and Wisconsin's workers' compensation laws apply to plaintiffs' remaining claims against the Chargers, Broncos, and Packers, respectively.

As *Hauch* recognized, "[s]uits by employees against their immediate employers for injuries arising out of and in the course of employment are now barred by virtually all workmen's compensation statutes in this country." *Ibid.* Indeed, the workers' compensation statutes in California, Colorado, and Wisconsin all provide exclusive remedies, with certain limited exceptions, for claims by employees against their employers based on industrial injuries. *See* CAL. LAB. CODE §§ 3600, 3602; COLO. REV. STAT. §§ 8-41-102, -104; WIS. STAT. § 102.03(2); *see also Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 811–12 (2001) (an alleged injury "falls within the scope of the exclusive remedy provisions" of workers' compensation if it is "collateral to or derivative of" the course of employment); *Horodyskyj v. Karanian*, 32 P.3d 470, 474 (2001) (workers' compensation "provides exclusive remedies for employees suffering work-related injuries and occupational diseases"); *W. Bend Mut. Ins. Co. v. Berger*, 531 N.W.2d 636, 639 (Wis. Ct. App. 1995) ("Generally, an employee's exclusive remedy for a work-related injury lies under [workers' compensation].").

3

1    Plaintiffs do not dispute that their claims for relief derive from industrial injuries that
2 fall within the exclusive remedy provisions of workers' compensation. Their sole basis for
3 opposing the instant motion is the contention that they have raised a genuine issue of material
4 fact as to whether each remaining claim against defendants falls within an "intentional harm"
5 exception to exclusivity under the applicable law.

### 2. WALKER'S CLAIM AGAINST THE CHARGERS (CALIFORNIA).

Plaintiffs contend Walker's claim for relief against the Chargers falls within two separate exceptions to workers' compensation exclusivity for "aggravation of injury" and "fraud claims," citing *Stalnaker v. Boeing Co.*, 186 Cal. App. 3d 1291 (1986), for the former and *Johns-Manville Prods. Corp. v. Superior Court*, 27 Cal. 3d 465 (1980), for the latter. *See also Foster v. Xerox Corp.*, 40 Cal. 3d 306, 308 (1985) ("An employee who suffers an injury in the course of his employment may recover damages in an action at law only if he comes within certain exceptions to the workers' compensation law."). Actually, these arguments relate to only one exception to exclusivity, recognized in *Johns-Manville* (and discussed in *Stalnaker*) and subsequently codified in Section 3602(b)(2) of the California Labor Code, which provides that exclusivity does not bar a claim for relief "[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment." *See Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 719–20 (1994) (noting statutory codification of fraudulent-concealment exception).

This fraudulent-concealment exception is an extremely limited one. *E.g.*, *Jensen v. Amgen, Inc.*, 105 Cal. App. 4th 1322, 1326–27 (2003). To recover under the exception, Walker must prove that (1) the Chargers knew of his work-related injury, (2) the Chargers concealed that knowledge from him, and (3) the injury was aggravated as a result of such concealment. The exception does not apply if Walker was aware of the injury at all times. *See, e.g.*, *Silas v. Arden*, 213 Cal. App. 4th 75, 91 (2012). Assuming for present purposes that Walker's claim for intentional misrepresentation functions interchangeably with a claim for fraudulent concealment, it nevertheless does not qualify for the exception.

4

There is no evidence in the summary judgment record from which a rational trier of fact could find that the Chargers concealed knowledge of Walker's own ankle injury from him. Plaintiffs do not dispute that Walker was aware of the ankle injury in question at all times. They point out that "[t]he Chargers did not tell [him] of the risk that the Medications would aggravate the existing injury." But this would still not suffice to bring Walker's claim within the fraudulent-concealment exception. Plaintiffs cite no authority for the proposition that merely concealing generalized risks associated with work-related substances that can aggravate a work-related injury — as opposed to concealing knowledge of the specific work-related injury itself — satisfies the first element of the fraudulent-concealment exception. Indeed, *Johns-Manville* itself rejected that very proposition.

In *Johns-Manville*, an employee who became ill from asbestos exposure at work sued his employer for fraud, among other things, based on allegations that the employer (1) knowingly made him work in an unsafe environment while concealing the attendant risks from him, and (2) after he became ill, induced him to continue working by deliberately failing to notify him, his doctors, or the state of the illness or its connection with his employment, thereby aggravating the consequences of the illness. 27 Cal. 3d at 468–70. The California Supreme Court held that the *latter* allegations, if proven, would support recovery under the fraudulent-concealment exception, but specifically noted that workers' compensation would have been the plaintiff's sole remedy had the complaint "alleged only that plaintiff contracted the disease because defendant knew and concealed from him that his health was endangered by asbestos in the work environment, failed to supply adequate protective devices to avoid disease, and violated governmental regulations relating to dust levels at the plant." *Id.* at 474–75.

In short, it is not enough, as plaintiffs suggest, to insist that the Chargers engaged in *some* type of fraudulent concealment. Counsel's muddling of plaintiffs' own theories concerning the specific alleged misconduct at issue does not substitute for actually satisfying each and every element of the fraudulent-concealment exception to exclusivity. To lose the protection of workers' compensation exclusivity, the Chargers must have concealed knowledge

5

1  of Walker's underlying work-related injury from him and aggravated said injury as a result. On
2  this point, plaintiffs have not shown any genuine dispute of material fact in their favor.

3  Plaintiffs also contend the Chargers "acted deliberately with the specific intent to injure"
4  Walker by "[p]roviding dangerous Medications, contrary to both legal requirements and good
5  medical practice, without providing information or warnings." This is a different theory of
6  liability than the one actually underlying plaintiffs' remaining claims. Indeed, it is a throwback
7  to plaintiffs' dismissed concealment claims. But even assuming plaintiffs can shift ground for
8  present purposes to overcome the exclusivity bar, their argument on this point is unavailing.

9  Though not organized or identified as such, plaintiffs' argument ostensibly attempts to
10 invoke the trend in California law to find an exception to exclusivity "if the employer acts
11 deliberately for the purpose of injuring the employee." *See, e.g.*, *Fermino*, 7 Cal. 4th at 712
12 (quoting *Johns-Manville*, 27 Cal. 3d at 476). That trend, however, concerns cases involving
13 willful physical assault. *See Johns-Manville*, 27 Cal. 3d at 475–76; *see also Stalnaker*, 186 Cal.
14 App. 3d at 1300 (the "willful assault exception" covers intentional torts committed with "the
15 specific intent to injure"). Indeed, *Stalnaker* — plaintiffs' sole authority on this point — found
16 "the willful physical assault line of cases . . . inapposite" where the defendant employer
17 allegedly created working "conditions so dangerous that there was a 'substantial certainty' of
18 [the employee's] death or injury." *See* 186 Cal. App. 3d at 1300; *see also Fermino*, 7 Cal. 4th
19 at 723 n.7 (Section 4553 of the California Labor Code, which governs claims for "serious and
20 willful misconduct," encompasses even "industrial injury [that] will result from an employer's
21 violation of health and safety . . . and similar regulations"). Thus, in *Stalnaker*, counsel's
22 argument that the risk of injury to the employee "was as immediate and certain as a fist in the
23 face" — an analogy echoed by plaintiffs here — fell flat because "no facts adduced" indicated
24 that the employer intended to injure the employee. *See* 186 Cal. App. 3d at 1300. So too here.[*]

---

[*] In a footnote of their opposition brief, plaintiffs cite *Fermino* for the proposition that "California law permits the Court, in circumstances such as these, to find an exception to workers' compensation exclusivity even if no statutory or judicially-recognized exception exists." *See* 7 Cal. 4th at 719–21. Even assuming plaintiffs read *Fermino* correctly for this proposition, they have not taken the next step and developed any argument that would justify crafting a brand-new exception to exclusivity under California law for this case.

6

This order recognizes, as have California courts, that workers' compensation exclusivity may bar claims that reveal egregious employer misconduct. But the mere culpability of such misconduct, without more, is not a basis for keeping in court a claim properly subject to the exclusive remedy provisions of workers' compensation laws. *See, e.g.*, *Vacanti*, 24 Cal. 4th at 813 ("[I]f the injury arises out of and in the course of the employment, the exclusive remedy provisions apply notwithstanding that the injury resulted from . . . intentional conduct [that] might be characterized as egregious." (quotation and citation omitted)); *Gunnell v. Metrocolor Labs., Inc.*, 92 Cal. App. 4th 710, 714 (2001) ("We observe that the facts of this case reveal egregious misconduct by the employer, who failed to take steps to assure the safety of workers hired to use a dangerous chemical substance and concealed the danger from those employees. While we do not condone the employer's misconduct, we feel constrained by *Johns-Manville, supra*, 27 Cal. 3d 465, whose holding we are required to follow.").

### 3. CARREKER'S CLAIM AGAINST THE BRONCOS (COLORADO).

Plaintiffs contend Carreker's claim for relief against the Broncos is for "intentionally harmful employer conduct" that falls outside workers' compensation exclusivity. *See, e.g.*, *Ventura v. Albertson's, Inc.*, 856 P.2d 35, 39 (Colo. App. 1992) ("An employer may be subjected to tort liability for intentional torts . . . if the employer deliberately intended to cause the injury."). Their sole argument as to the Broncos is that the club's "administration of large amounts of unlabeled, unpackaged controlled substances to [him], coupled with the knowledge that such drugs were dangerous, creates, at minimum, a jury question whether the Broncos intentionally injured [him]."

Colorado has rejected the proposition that "charging a defendant with wanton and/or willful disregard of the rights and safety of others is . . . the equivalent of an allegation of willful or intentional injury" for purposes of workers' compensation exclusivity. *See Schwindt v. Hershey Foods Corp.*, 81 P.3d 1144, 1146–47 (Colo. App. 2003) (quoting *White v. Hansen*, 837 P.2d 1229, 1233 (Colo. 1992)). For example, in *Ellis v. Rocky Mountain Empire Sports, Inc.* — a decision cited by defendants and ignored by plaintiffs — a former NFL player sued the Broncos and its personnel based on allegations that "the Broncos negligently and intentionally

7

required him to engage in contact football drills before he had fully recovered from [an] off-season knee injury, and that this activity caused further injury to his knee." 602 P.2d 895, 896 (Colo. App. 1979). There, as here, "there [was] no dispute that the injury occurred in the course of and within the scope of . . . employment." Workers' compensation exclusivity therefore barred the plaintiff's claims for relief against the Broncos, including for intentional torts. *Id.* at 897–98 (applying an older version of Colorado's workers' compensation statute). So too here.

### 4. CARREKER'S CLAIM AGAINST THE PACKERS (WISCONSIN).

Plaintiffs similarly contend Carreker's claim for relief against the Packers is "based on intentional wrongdoing of a nature and magnitude that falls outside the workers' compensation exclusivity principle," again asserting that "[i]njuries are substantially certain to result from repeated massive ingestions of dangerous controlled substances given without warnings or proper medical attention." Plaintiffs rely on *Berger* for the proposition that "the intentional harm exception to workers' compensation exclusivity is triggered when a defendant's actions are sufficiently dangerous that injury is substantially certain to result." Actually, *Berger* stated, "To avoid the exclusivity provision of the WCA, an employee must show that a *coemployee* committed an *assault* intended to cause bodily harm" — referring to an exception to exclusivity in Wisconsin for actions against *coemployees*, not against *employers*. 531 N.W.2d at 640 (emphasis added) (applying Wis. Stat. § 102.03(2)). Plaintiffs' attempts to shoehorn Carreker's claim into the coemployee exception articulated by *Berger* are unavailing.

*First*, plaintiffs argue that *Berger* applies here because, "for all material purposes, Carreker and the Packers' team doctors and trainers were co-employees." This argument misses the point. Plaintiffs chose to sue the Packers, not the Packers' team doctors and trainers. Plaintiffs' characterization of the latter as "co-employees" does not suffice to bring the former within Wisconsin's assault exception to workers' compensation exclusivity. *See also id.* at 639 (exceptions to exclusivity "are to be narrowly construed"). *Second*, while recognizing that Wisconsin's exception to workers' compensation exclusivity applies to *assaults*, plaintiffs make no argument whatsoever that the Packers assaulted Carreker. Either of the foregoing problems

8

would independently defeat plaintiffs' attempt to exempt Carreker's claim for relief against the Packers from workers' compensation exclusivity under Wisconsin law.

\*     \*     \*

With this order, the second in a series of lawsuits arising out of the administration of painkillers in the NFL comes to an end and proceeds to our court of appeals. *See generally Dent v. Nat'l Football League*, No. C 14–02324, 2014 WL 7205048 (N.D. Cal. Dec. 17, 2014). This and other orders ruling against the theories advanced by plaintiffs' counsel in these cases do not diminish the seriousness of the national need to protect the health and safety of our professional athletes. As stated in *Dent*, "[i]n ruling against the novel claims asserted herein, this order does not minimize the underlying societal issue. In such a rough-and-tumble sport as professional football, player injuries loom as a serious and inevitable evil. Proper care of these injuries is likewise a paramount need." *See id.* at \*12. Although workers' compensation and collective bargaining remedies are not gold-plated remedies, they are at least remedies recognized under the law. The sweeping remedy sought herein by plaintiffs is not, on this record, available under the law.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED**. Judgment will follow.

**IT IS SO ORDERED.**

Dated: July 21, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9